## KODSI FAMILY TRUST

### Parties

THIS TRUST AGREEMENT is made December 31, 1997 between ALAIN KODSI, residing at 75 Henry Street, Apartment 27E, Brooklyn, New York 11201 (the "Settlor") and ANTONIO J. GRACIAS, residing at 1709 N. Burlig Street, Chicago, Illinois 60614 (the "Trustee").

### Recital

The Settlor wishes to provide for the needs of his family. To help accomplish that objective, the Settlor hereby transfers to the Trustee, and the Trustee hereby acknowledges receipt of, the sum of One Hundred ($100.00) Dollars as the trust's initial principal.

### Terms of Agreement

The Trustee shall hold the initial principal, and any additions to this trust, invest and reinvest the same and collect any income, and, after the payment of all lawful charges, shall, subject to all of the provisions hereof, dispose of the principal and its income as provided in this agreement.

### FIRST:

#### Payment and Application of
#### Income and Principal of the Trust

1.1  The Trustee shall hold all property assigned to or otherwise acquired by the Trustee, IN TRUST, to hold, manage,

invest and reinvest the same and collect the income therefrom, and after the payment of all lawful charges therefrom and subject to this agreement, the Trustee shall pay or apply so much or all of the net income during the term of the trust, and so much or all of the principal, to or for the use of such member or members of a class of persons consisting of the Settlor's mother, the Settlor's spouse and the Settlor's descendants of any degree, whenever born, in such amounts and proportions (and, if determined by the Trustee, subject to the trust provisions of Article THIRD) as the Trustee, in the exercise of absolute discretion, shall from time to time determine.  The Trustee may pay or apply such income or principal to or for the use of any one member of the class or apportion it for the benefit of various members of the class to the exclusion of other members, in such manner as the Trustee shall from time to time deem advisable without equality of treatment, taking into consideration the best interests and welfare of all such members, including the desirability of augmenting their respective estates and other circumstances which the Trustee deems pertinent.  Any net income not distributed in any year shall be accumulated and added to principal.

1.2  In exercising his absolute discretion to distribute the income or principal of this trust, it shall not be necessary for the Trustee to inquire as to any other income or property of the person or persons for or to whom such principal or income is to be distributed.  However, during the lifetime of the Settlor, (i) prior to making distributions of principal or

income to the Settlor's spouse, the Trustee must receive the consent of the Settlor's mother if she is then living, and (ii) any income not paid must be held in a separate account for future distribution to, or in trust for, the Settlor's issue, unless the Settlor's Mother consents for the income to be held for all beneficiaries of the trust.

1.3   Any decision of the Trustee with respect to the exercise of his discretionary powers set forth in this Article, made in good faith, shall fully protect the Trustee and shall be binding and conclusive upon all persons interested in this trust.

1.4   Upon the death of the Settlor's Mother, the then principal of the trust shall be distributed to such of her issue, or spouses of her issue (whether in trust or outright), as the Settlor's Mother shall validly appoint in her last will specifically referring to this power, and the unappointed property, if any, shall be distributed in accordance with Sections 1.5, 1.6 and 1.7 below.

1.5   Upon the Settlor's death, the limited power of appointment given to the Settlor's Mother in Section 1.4 shall be extinguished, and the then principal of the trust shall be distributed to such persons (whether in trust or outright) other than to the Settlor, the Settlor's estate, the Settlor's creditors or creditors of the Settlor's estate, as the Settlor shall validly appoint in his last will specifically referring to

this power, and the unappointed property, if any, shall be distributed in accordance with Sections 1.6 and 1.7 below.

1.6  If the Settlor's spouse survives the Settlor, then upon the Settlor's death the Trustee shall set apart and hold as a separate trust from any unappointed property then remaining (the "Marital Trust"), that sum, if any, which will, if allowable as a marital deduction for Federal estate tax purposes (as finally determined), reduce to zero (or as close to zero as is possible) the Federal estate tax on the Settlor's estate.  The provisions of the previous sentence shall prevail over any similar provision in the Settlor's Will, so that the funding of the Marital Trust shall occur after all gifts made in the Settlor's Will that cannot qualify for the Federal estate tax marital deduction and may therefore be reduced, are reduced or eliminated.

1.6.1  The Trustee shall hold, manage, invest, reinvest and collect the income from the Marital Trust, and pay or apply all the net income at least quarter-annually to or for the benefit of the Settlor's spouse during her lifetime.  In the exercise of absolute discretion, the Trustee may pay or apply all or a portion of the principal of the Marital Trust to or for the Settlor's spouse's benefit, at any time and from time to time, for whatever reasons the Trustee deems appropriate.

1.6.1.1  Upon the Settlor's spouse's death, the then remaining Marital Trust principal shall be distributed

(i) except to the extent the Settlor's spouse's Will contains a different direction (specifically referring to this trust) for the payment of transfer and death taxes, first to the Settlor's spouse's legal representatives, in an amount equal to the amount of any increased transfer and death taxes (other than generation-skipping taxes) payable by reason of her death resulting from the inclusion of some or all of the Marital Trust in her gross estate for Federal estate tax purposes; and (ii) the balance _per_ _stirpes_ to the Settlor's issue who survive the Settlor's spouse, subject to the trust provisions of Article THIRD. The Trustee may, for purposes of paying over the amount of increased estate taxes to the Settlor's spouse's estate, treat as correct any written request from the Settlor's spouse's legal representative.

      1.6.2  The Marital Trust under this Section 1.6 shall not be funded with any property or the proceeds of any property (i) which is not subject to the Federal estate tax on the Settlor's estate unless payable to his estate, (ii) which would not qualify for the marital deduction allowable in determining Federal estate tax on his estate or (iii) which is includible in the Settlor's gross estate for Federal estate tax purposes and is also subject by reason of the Settlor's death to any estate, inheritance or succession taxes or other death duties by any foreign taxing authority, except that the property described in this clause (iii) may be allocated to the Marital Trust to the extent that other property of the Settlor's estate which qualifies for the marital deduction is not sufficient to fund the Marital Trust in full. Each item of property used to

fund the Marital Trust shall for that purpose be valued at its fair market value on the date it is set apart by the Trustee. None of the powers granted by this agreement shall be exercised in a manner that would cause any property held in the trust which would otherwise qualify for the federal estate tax marital deduction not to so qualify.

1.7  Any property not effectively disposed of. pursuant to Section 1.4, 1.5 or 1.6, shall be distributed <u>per stirpes</u> to the Settlor's issue then living, subject to the trust provisions of Article THIRD.


### SECOND:

### <u>Special Powers Relating to Settlor's Estate</u>

The Trustee is specifically authorized, in addition to the other powers conferred upon him in this agreement, to (i) make loans to the legal representatives of the Settlor's estate, the Settlor's spouse's estate, or the Trustees of any trust established by the Settlor or his spouse, and (ii) purchase assets from the Settlor's estate, the Settlor's spouse's estate, or the Trustees of any trust established by the Settlor or his spouse.


### THIRD:

### <u>Issue Trust</u>

3.1  If any child of the Settlor or any issue of any child of the Settlor becomes entitled to receive any part or share of the principal or income of any trust created under this

agreement, subject to the provisions of this Article THIRD, that part or share shall be held by the Trustee, IN TRUST, as a separate trust for the benefit of such child or issue of a child of the Settlor, as the case may be, entitled to receive that share (the child or other issue of the Settlor for whose benefit a separate trust exists is referred to as the "Primary Beneficiary"). The Trustee shall hold, manage, invest and reinvest the trust property, collect the income therefrom, and pay or apply to or for the benefit of the Primary Beneficiary or one or more of the issue of the Primary Beneficiary living from time to time, whether or not alive at the Settlor's death, some or all of the net income of the trust, and some or all of the principal, in such amounts or proportions (and, if determined by the Trustee, subject to the trust provisions of this Article), whether equal or unequal and even to the exclusion of one or more of the eligible distributees of the trust, and at such time as the Trustee, in the exercise of absolute discretion, shall determine. Any net income not paid or applied to an eligible person shall be accumulated and added to the principal of the trust.

3.2  At the time of payment or application of any amounts of trust fund principal to or for the use of any of the issue of the Primary Beneficiary, the Trustee may designate those amounts or any portion thereof as anticipatory principal distributions. All amounts so designated shall be deducted from the principal of any share which may thereafter become distributable to the issue who received the anticipatory

principal distributions, or to his or her ancestors or descendants.

      3.3  Upon the death of the Primary Beneficiary of a trust, the trust shall terminate and the then remaining principal of the trust shall be paid over and delivered by the Trustee to or IN TRUST for the benefit of the persons and objects and in such proportions and in further trust or otherwise, with the same or other or additional trustees, and with the same or another situs, as the Primary Beneficiary shall appoint by Will duly admitted to probate expressly referring to this power of appointment; provided, the power of appointment shall not be exercisable to any extent in favor of the Primary Beneficiary, the Primary Beneficiary's estate, the Primary Beneficiary's creditors or creditors of the Primary Beneficiary's estate.  To the extent the Primary Beneficiary does not effectively exercise this limited power of appointment, the unappointed property shall be divided, subject to the trust provisions of this Article:

      3.3.1  among the Primary Beneficiary's then living issue per stirpes; or if none,

      3.3.2  per stirpes among the then living issue of the Settlor's most remote descendant who is an ancestor of the deceased Primary Beneficiary and who has issue then living; or if none,

3.3.3  _per stirpes_ among the Settlor's then living issue; or if none,

3.3.4  distributed in the same manner as it would be distributed if such unappointed property constituted a part of the Primary Beneficiary's estate; provided, no part thereof shall be distributed to the Primary Beneficiary's legal representative, but shall be distributed directly to the beneficiaries of the Primary Beneficiary's estate.

3.4  The Trustee shall be extremely liberal in exercising the absolute discretion conferred upon him, and preference shall be given to the comfort, welfare and needs of the Primary Beneficiary for whom a trust is established, rather than for the benefit of the other eligible income beneficiaries or the conservation of principal for the benefit of the remaindermen.  No payment or application of any amount of a trust shall be made to any beneficiary of that trust, other than to or for the benefit of the Primary Beneficiary of the trust, unless the Trustee determines in the exercise of absolute discretion that the Primary Beneficiary is adequately provided for.

3.5  The provisions of this Article THIRD are intended primarily as a means of offering support and financial assistance to the Primary Beneficiary and to assist the Primary Beneficiary during the period of the Primary Beneficiary's education, including college and post-graduate education, in setting up in business, and in setting up the Primary Beneficiary's home, but

this enumeration is to serve only as a guide and shall not be construed to restrict the powers conferred upon the Trustee by this Article.

3.6   The authorization given to the Trustee under this Article to apply income or principal for the benefit of any minor beneficiary shall include the power to pay funds to any adult person with whom the minor beneficiary resides for the purposes of reimbursing the adult person for increased home maintenance expenses and the beneficiary's living expenses.

3.7   Any exercise by the Trustee of these discretionary powers made in good faith shall be fully protected and shall be binding and conclusive upon all persons interested in the trust.

3.8   Notwithstanding any provision of this agreement to the contrary, all trusts under this Article shall terminate upon the expiration of twenty-one (21) years following the death of the survivor of the Settlor, the named Trustee, the Settlor's issue and the named Trustee's issue living on the date of this agreement.   Upon termination at that time, the principal of each trust shall be distributed to its Primary Beneficiary.   It is recognized that any of the trusts created under this agreement may terminate prior to that time as a result of death or the exercise by the Trustee of his discretionary power to pay all the principal of a trust to a beneficiary of that trust.

FOURTH:

Trust for Disabled Person's Property

4.1  Whenever under this agreement, any property is to be distributed free of trust to a disabled person, title to that property shall vest in the disabled person, but payment may be deferred and held by the Trustee, who shall apply so much or all or none of the principal and income as he may determine, in the exercise of absolute discretion (without regard to the other income or other resources of the disabled person), for the disabled person's comfort and welfare.  When the disability ceases, the Trustee shall deliver the property and any accumulated income to the disabled person or his or her legal representatives.  Any income accumulated by the Trustee shall be added to and accounted for as principal.

4.2  The Trustee may, at any time and from time to time, in the exercise of absolute discretion, distribute all or a portion of the property to the disabled person's parent, guardian, custodian under a Uniform Gifts to Minors Act, Uniform Transfers to Minors Act, committee, conservator or an individual with whom the disabled person resides.  The receipt of the distributes shall constitute a full and sufficient discharge to the Trustee.  All powers granted to the Trustee by this agreement shall apply to any property held in accordance with this Article.

4.3  A "disabled person" means a minor or a person who is deemed by the Trustee, in the exercise of absolute discretion, to be physically or mentally incapable of managing his or her

11

affairs, whether or not a judicial declaration of incapacity may have been made.

## FIFTH:

### Definitions

5.1  The words "Trustee" and "Trustees" and the pronouns therefor used herein shall be construed as masculine, feminine or neuter, and in the singular or plural, as the sense requires, and shall include any and all successor and additional Trustees.

5.2  The "Settlor's spouse" means the Settlor's lawful spouse at the time of any payments hereunder or, after the Settlor's death, the person who was the Settlor's lawful spouse at the time of the Settlor's death.

5.3  "Per stirpes" when used with respect to a distribution of property among the issue or descendants of a person, means that the descendants of a deceased ancestor take the share such ancestor would have received had he or she been living, provided the descendants of a living person take nothing. The per stirpital allocation shall commence with the children of the person, whether or not there are children living.

## SIXTH:

### Trustees

6.1  The Settlor may at any time during his lifetime (a) appoint a successor Trustee (other than the Settlor) to serve

12

in place of any Trustee who may resign or for any reason (other than having been removed pursuant to subsection (c) below) be no longer acting as Trustee, (b) appoint any one or more additional Trustees (other than the Settlor), and (c) remove the Trustee(s) of any trust created hereunder and appoint a successor Trustee(s) who is not related or subordinate to the Settlor within the meaning of Code §672(c).  Such appointments shall be made by a written instrument delivered to the Trustees then acting, if any, and to the appointee, and shall become effective on the date, or upon the date of the happening of the event, specified in the instrument, and may be revoked in the same manner at any time before the successor qualifies.  The successor or additional Trustee may be any individual (other than the Settlor), bank or trust company.

6.2   Subject to the provisions of Section 6.1, the Settlor's spouse may at any time and from time to time after the Settlor's death, during her lifetime (i) appoint a successor Trustee (other than herself) to serve in place of any Trustee who may resign or for any other reason (other than having been removed pursuant to subsection (iii) below) be no longer acting as Trustee, (ii) appoint one or more additional Trustees (other than herself), and (iii) remove the Trustee(s) of any trust created hereunder and appoint a successor Trustee(s) who is not related or subordinate to her within the meaning of Code §672(c). Such appointments and removals shall be made by a written instrument delivered to the Trustee then acting, if any, and to the appointee, and shall become effective on the date, or upon

the happening of the event, specified in such instrument.  Prior
to the specified date or event, the appointment may be withdrawn
by an instrument in writing delivered to the persons to whom the
instrument of appointment or removal was delivered.  Except as
provided above, the successor or additional Trustee(s) may be any
individual (other than the Primary Beneficiary), or any bank or
trust company.

     6.3  Subject to the provisions of Section 6.1, the
Primary Beneficiary of a trust under Article THIRD may at any
time and from time to time after attaining age thirty-five (35)
during his or her lifetime (i) appoint a successor Trustee (other
than himself or herself) to serve in place of any Trustee who may
resign or for any other reason (other than having been removed
pursuant to subsection (iii) below) be no longer acting as
Trustee, (ii) appoint one or more additional Trustees (other than
himself or herself), and (iii) remove the Trustee(s) of any trust
created hereunder and appoint a successor Trustee(s) who is not
related or subordinate to him or her within the meaning of Code
§672(c).  Such appointments and removals shall be made by a
written instrument delivered to the Trustee then acting, if any,
and to the appointee, and shall become effective on the date, or
upon the happening of the event, specified in such instrument.
Prior to the specified date or event, the appointment may be
withdrawn by an instrument in writing delivered to the persons to
whom the instrument of appointment or removal was delivered.
Except as provided above, the successor or additional Trustee(s)

may be any individual (other than the Primary Beneficiary), or any bank or trust company.

6.4   After the Settlor's death, the majority of the Trustees of any trust serving at any time may designate one or more individuals over age thirty (30) or a bank or trust company to act as successor Trustee(s) after all individuals previously designated (whether by this agreement, designations made by the Settlor under Section 6.1, or prior designations under this Section) have failed to qualify or ceased to act, or if the only Trustee then acting is a beneficiary of the trust.

6.5   After the Settlor's death, if all Trustees of any trust shall have ceased acting and there are no successor designations (or the designated successors for any reason fail to qualify), the oldest living income beneficiary of the trust (or his or her guardian if the beneficiary is under age 18) may designate an individual over age thirty (30) or a bank or trust company to act as Trustee or successor Trustee.

6.6   After the Settlor's death, all the Trustees of any trust serving at any time, acting jointly, may appoint one or more individuals over age thirty (30) or a bank or trust company to act as an additional Trustee(s).

6.7   All trustee designations under Sections 6.4 to 6.6 shall be in writing, acknowledged and delivered to the appointee and to the Trustees then in office, or if no Trustee is then in

office, to any adult person who is a beneficiary of the trust and may be revoked in the same manner by all the persons making the designation at any time before the successor qualifies.

6.8   The Trustee and any person, bank or trust company acting as a successor or additional Trustee of any trust shall serve without giving any bond or other security in any jurisdiction.

6.9   Any Trustee of a trust may resign as Trustee hereunder by a written instrument duly acknowledged and delivered to the remaining Trustees, if any, and to the Settlor, if then living, or if the Settlor is not then living, to each of the trust's adult beneficiaries.

6.10 All powers and discretion conferred by law or by this agreement upon the Trustee, including, without limitation, the right to appoint additional or successor Trustees, may be exercised by the Trustees in office from time to time.

6.11 If a person under a disability is a party to any legal proceeding relating in any manner to any trust created by this agreement, service of process upon the disabled person shall not be required if another individual, not under a disability, is a party to the proceeding and has the same interest as the disabled person.

16

## SEVENTH:

### No Power of Alienation

No beneficiary of any trust created under this agreement shall under any circumstances have any power of alienation, either voluntary or involuntary, of any property (whether income or principal) at any time constituting any part of the trust of which he or she is beneficiary prior to actual receipt thereof by the beneficiary; nor shall any beneficiary have any power to encumber the income or principal of the trust of which he or she is beneficiary or any part thereof, nor shall any beneficiary have any control of the principal or income of the trust of which he or she is beneficiary, or any part thereof, until after actual receipt by the beneficiary; and no part of the principal or income of the trust of which he or she is beneficiary shall ever be subject to the claims of the creditors or spouse of any beneficiary.

## EIGHTH:

### Limitation

Notwithstanding any other provisions of this agreement (i) any person acting as a Trustee to whom or for whose benefit discretionary payment or application of income or principal may be made may not participate in the exercise of the discretionary powers, and (ii) any individual acting as a Trustee who is obligated to support or maintain a person may not participate in the exercise of the discretionary power to pay or apply income or principal for that person's benefit in discharge of the support obligation; and in that event the discretionary power may be

17

exercised by the other Trustees, or if no other Trustee is acting, by a court having jurisdiction over the trust's administration.

NINTH:

Trustee's Powers

In addition to, but not in limitation of, the powers conferred by law or elsewhere in this agreement, the Trustee shall have with respect to all property which shall at any time be held in any trust under this agreement, the following powers, exercisable in his sole and absolute discretion without court authorization:

9.1  To sell or exchange, at public or private sale (giving credit for any length of time and without requiring any security), all or any part of the trust property, whether real or personal, and to enter into contracts and grant options to sell or exchange the property.

9.2  To lease all or part of the real or personal property held in trust for any term, even for a term longer than the probable duration of any trust, to grant options for the renewal of any lease, and to alter, repair, improve or mortgage any property.

9.3  To invest and reinvest all or any part of any trust in real or personal property (including any undivided interest), wherever located, without regard to whether the investment is otherwise lawful for investment of trust funds, including, without limitation, (a) preferred or common stocks; (b) bonds; (c) interests in natural resources (including working interests in oil, gas, or other minerals); (d) interests in investment trusts or common trust funds (regardless of any compensatory or other relationship the Trustee may have with those funds); (e) secured or unsecured obligations; (f) commodities (including contracts for future delivery); (g) other evidences of rights (including warrants, puts or calls); and (h) investment partnerships (as a general or limited partner) including "hedge" funds and joint venture capital accounts, and without requiring investment diversification as to kind or amount; to lend stocks, bonds or other securities constituting all or a portion of any trust, with or without security, and for

any term, even for a term longer than the probable duration of
any trust; and to make investments on credit or on margin or with
borrowed funds, and to sell securities (or put and call options
for securities) for future delivery, whether or not at the time
of sale the trust has any interest in the securities sold (or
covered by the options); and to invest in property whether or not
the property produces income or is a wasting asset or is
considered speculative, and without regard to the ratio which
that property might bear to the entire amount of the trust in
which the property is held.  The Trustee shall not be subject to
surcharge by reason of the acquisition or retention of any
investment, even though the investment is speculative or not of
the kind ordinarily made by a prudent person.

      9.4  To continue the trust invested in such stocks,
bonds or other securities and real and personal property
hereafter acquired from any additions to the trust, without any
requirement for diversification; and to carry on any business,
partnership, joint venture or enterprise in which the fund
represented by such stock, bonds and other securities or property
may be invested at the time the same are received.

      9.5  To distribute in cash or in kind, or partly in
cash and partly in kind, and to allot to any distributive share
specific real or personal property, or an undivided interest
therein.  Except for valuation, the Trustee's distribution or
allotment decisions shall be final.

      9.6  To distribute appreciated or depreciated property
(instead of cash) to the beneficiary (including a trust) in order
to reduce the income taxes of the beneficiary.

      9.7  To settle, adjust, compromise, arbitrate or
abandon any claim or controversy in which any trust may be
interested.

      9.8  To vote in person or by proxy all stock, bonds,
mortgages or other securities on all matters; to exchange stock
or other securities and exercise any option in connection there-
with; to deposit any securities with any protective or similar
committee; to enter into a voting trust agreement; to transfer
any stock or securities to the trustees under a voting trust
agreement; and, generally, to exercise all the rights and powers
as are or may be lawfully exercised by persons owning securities
or other property.

      9.9  To borrow money, on a secured or unsecured basis,
from any source (including himself), needed or convenient for the
administration of any trust, and to maintain a margin account or
accounts and to make such pledges of and other undertakings with
respect to assets of any trust as he deems advisable in
connection with the establishment and maintenance of such account
or accounts.

9.10 To lend all or any portion of the funds of any trust, with or without security and with or without interest, to any beneficiary, to make any trust property available as security for a loan obligation or undertaking made or to be made by any beneficiary, or to guarantee a loan to be made to, or any obligation to be assumed by, any beneficiary (notwithstanding in each case that the beneficiary may also be a Trustee), subject to those terms and conditions as the Trustee may in his absolute discretion impose.

9.11 To pay and/or deliver to either parent or to the guardian of the property of any minor or to an adult with whom such minor resides or to a custodian under a state Uniform Gifts to Minors Act, any sum or property of any trust, including income, which such minor shall either be entitled to receive or to have applied for his or her use and benefit under any of the provisions of this agreement, without requiring that such parent or adult obtain letters of guardianship or that such parent, adult, guardian or custodian give any bond or other security for any such payment or delivery so made; if the applicable law allows, to designate that a custodianship shall continue until the minor attains age twenty-one (21); and the receipt of such parent, adult, guardian or custodian for the amount of such payment, or for the property so delivered, shall be an absolute protection to the Trustee and a full, complete and final release and discharge from all further accountability in respect to any such payment or delivery so made.

9.12 To employ and pay agents, bookkeepers, clerical help, accountants, attorneys, legal assistants or investment advisors (any of which may be himself or an entity in which he is interested), or other persons deemed to be necessary or convenient to administer any trust, to establish custodial accounts, to designate persons to hold discretionary trading accounts and to delegate ministerial powers.

9.13 To purchase at fair market value at the time of such purchase property of any character from the Settlor's estate and retain such property so long as the Trustee may deem advisable, whether or not such property is of the class in which trustees are authorized by law or any rule of court to invest trust funds; and to make loans from the trust to the legal representatives of the Settlor's estate upon such terms and conditions as the Trustee may deem advisable.

9.14 To vote for himself, or for any officer or employee of a corporate Trustee, to be a director or officer of any corporation in which any trust may be interested, or to be a member of any committee related in any way to such corporation, and any officers or employees of any corporate Trustee may serve as such directors, officers or committee members, and receive proper remuneration for such services, and may exercise free and untrammelled discretion with respect to all matters concerning the affairs of such corporation, and no Trustee or officer or employee of a corporate Trustee so acting as a director or

20

officer or as a member of such committee shall be accountable for his acts as such to any person interested in the trust.

9.15 To accept or substitute any stocks, bonds, scrip or other securities in exchange for any securities which may at any time constitute any part of any trust; and to exercise any powers incidental to any such acceptance or substitution; to pay all assessments, subscriptions or other sums of money for the protection of their interests as holders of any stocks, bonds or other securities, and to exercise any option contained in any stocks, bonds or other securities for the conversion of the same into other securities, and thereafter to hold any securities thus received.

9.16 To cause to be registered in his name as Trustee hereunder any securities which may from time to time comprise any trust, or to take and keep them unregistered, and to retain them or any part thereof in such condition that they will pass by delivery (including keeping them in a cash or margin account with a brokerage house in "street name").

9.17 To pay out of principal or income any and all claims or demands which properly may become payable from time to time against any trust, and the Trustee's allocation of any such charges against principal or income or partly against principal and partly against income shall be final and conclusive and binding upon all persons interested in the trust, and his absolute discretion in making the same shall not be questioned.

9.18 In case of securities taken or purchased at a premium, not to be bound to set apart any portion of the income as a sinking fund to restore or absorb such premium, but the same may be done if deemed desirable.

9.19 With respect to any and all stocks and bonds at any time delivered to the Trustee, to treat as income any dividends (except liquidating dividends) declared but not yet paid on any such stocks and any and all interest accrued on any bonds, at the time of delivery of such stocks, bonds or other securities to the Trustee; and during the term of administration of each trust created hereunder, to treat as income any and all cash dividends (whether or not of the kind sometimes described as "ordinary" dividends), and to treat as principal (a) all liquidating dividends, (b) all distributions made in the shares of the corporation making the same, whether in the form of a stock split or a stock dividend or otherwise (and whether or not such distributions would, for Federal income tax purposes, constitute currently taxable income), (c) all warrants, rights and similar incidents of stock ownership, (d) all dividends or distributions made in the stock of a corporation other than the one declaring the same, and (e) any and all distributions made other than from ordinary income by any investment company, mutual or real estate investment trust; and in connection therewith, to determine, at his absolute discretion, whether any cash dividend

is or is not a liquidating dividend; and to retain or distribute all such dividends accordingly as herein provided.

9.20  To allocate between principal and income any and all rents from leaseholds and any dividends or other distributions in respect of any stock of oil, gas, mining or lumber companies, and any and all distributions in respect of the kind of property ordinarily known as a wasting investment, constituting a part of any trust at any time, in such manner that there shall be allocated to income only ordinary income and there shall be allocated to principal any amounts representing depreciation, depletion, reserve, or other adjustments which are necessary or proper to insure the preservation as principal of the capital invested in such stock or property.

9.21  To divide property in any trust having an inclusion ratio (as defined in Code §2642(a)(1)) of neither one nor zero into two separate trusts representing fractional shares of the property being divided, one to have an inclusion ratio of one and the other to have an inclusion ratio of zero.

9.22  With respect to all or any part of the principal of any trust (including a pecuniary amount), by an instrument filed with the trust records, (a) to create a general testamentary power of appointment within the meaning of Code §2041 in any beneficiary, (b) to eliminate the power for all or any part of the principal as to which the power was previously created, and (c) to divide the trust principal into two fractional shares based upon the then portion of the trust that would be includible in the gross estate of the beneficiary holding the power if he or she died immediately before the division, and each part shall be administered as a separate trust unless the Trustee shall in his sole discretion thereafter combine the separate trusts into a single trust.  In authorizing such action it is the Settlor's hope (but not a direction) that a general power will be kept in effect when the Trustee believes the inclusion of the property in the beneficiary's gross estate may achieve a significant savings in transfer taxes by having an estate tax rather than a generation skipping tax imposed on the property subject to the general power, or income tax benefits deemed by the Trustee, in the exercise of absolute discretion, to be significant.  The power provided by this subparagraph shall not be exercised by any Trustee who is a beneficiary of the trust.

9.23  To divide property in any trust into two or more separate trusts (i) to enable the Trustee to invest the assets in a manner that will meet the disparate financial needs and investment goals of different trust beneficiaries, or (ii) to insulate some assets from potential future creditors, claims that could arise from the ownership of other property.

9.24  To delegate the power and discretions, or any of them, to any one or more of the other Trustees, if any, with further power to revoke any such delegations, and further, to

appoint from time to time, in his absolute discretion, an agent or agents for the purpose of performing any act which the Trustee is authorized, empowered or directed to do, whether or not such act may require absolute discretion on the part of such agent or agents, and the acts of any such duly appointed agent or agents shall in all respects be as lawful and binding upon the trust as if performed by the Trustee, and the Trustee shall not be personally liable to any beneficiary hereunder or to any other person by reason of any act done or omitted by the agent or agents so appointed, whether such act required absolute discretion on the part of such agent or agents or involved a delegation of absolute discretion by the Trustee.  No discretionary power may be delegated to a Trustee who is specifically precluded by law or by the provisions of this agreement from participating in the exercise of that power.

9.25 To commingle the assets of all or any of the separate trust established hereunder, the one with the other so that any one of the trusts may consist in whole or ´in part of an undivided share or shares in assets, the remaining undivided share or shares in which constitute the whole or a part of any other trust, and to substitute at any time and from time to time any investment or assets constituting a part or the whole of any trust for any investment or asset constituting a part or the whole of any other trust.

9.26 To carry on any business or interest in any business owned by the Settlor or at any time acquired by any trust, whether that business or interest is a sole proprietorship, an interest in a partnership or corporation, or otherwise; and in connection with the continuation and operation of the business or interest, to change or consent to change the nature of the business and the form in which the business or interest is conducted, operated or held, whether by way of recapitalization, incorporation, merger, consolidation, formation of a general or limited partnership, liquidation, partial liquidation, dissolution or otherwise.

9.27 With respect to each Policy, to exercise the following rights and powers in the Policy, each of which shall have been upon transfer or purchase vested solely in the Trustee:

9.27.1  To designate and change beneficiaries under the Policy, provided that the Settlor may not be designated as a beneficiary.

9.27.2  To demand and collect all Policy proceeds from the companies issuing the Policy, unless by assignment or beneficiary designation the Trustee shall have otherwise provided.

9.27.3  To cancel any certificate issued in connection with the Policy and any interest in the Policy, and to surrender the canceled Policy.

9.27.4  To borrow upon the Policy and assign any and all rights under it.

9.27.5  To convert any group insurance policy or policies on the life of the Settlor to an individual life insurance policy.

9.27.6  To surrender the Policy for its cash surrender value.

9.27.7  To exercise all other options, rights and elections (including, without limitation, the right to elect methods of settlement and to exercise any conversion privilege) exercisable under the Policy or allowed by the company or companies issuing the Policy.

9.28 To exercise all powers and authority, including any discretion conferred in this Article, after termination and until any trust is fully distributed.

TENTH:

Trustee's Commissions; Liability

10.1  During the Settlor's lifetime, no Trustee shall be entitled to commissions or other compensation.

10.2  After the Settlor's death, a corporate Trustee shall be entitled to commissions for its services in accordance with its printed fee schedule in effect from time to time, and each individual Trustee shall be entitled to receive for rendering services as Trustee of each trust established hereunder and for holding property subject to a power in trust, without obtaining judicial authorization therefor, the commissions that would be allowed to a sole trustee under the laws of the State of New York governing compensation to the trustees of a testamentary trust, computed in the manner and at the rates in effect at the time when the compensation is earned.  The commissions payable from income for any trust year may be paid either from the trust

24

income of that year or from the trust income of any other trust year.  A Trustee who is an attorney, accountant, investment advisor or other professional shall not be disqualified from rendering services to any trust under this agreement and being compensated on a reasonable basis therefor in addition to any compensation which the Trustee is otherwise entitled to receive as such Trustee; neither shall a firm with which such Trustee is associated as a partner, officer or employee be disqualified from dealing with, rendering services to or discharging duties for any such trust and being compensated therefor on a reasonable basis.

10.3  Each Trustee, during the entire term of any trust, shall be entitled to reimbursement for all proper disbursements and expenses, including fees of agents, experts and counsel, and the costs of defending any litigation or other claim (whether or not successful) brought against the Trustee by any beneficiary or other person.  Each successor Trustee shall be excused from inquiring into the acts of his predecessor, or taking any action against his predecessor.  The costs of preparing an accounting in connection with the resignation of a Trustee shall be paid from the trust.

10.4  The annual commissions set forth in this agreement may be increased at any time or times by written agreement between the Trustee and the trust's then current adult income beneficiaries (who are not disabled persons) which agreement shall be binding and conclusive upon each and every person (whether or not then living or ascertainable) who shall

25

then or thereafter be or become interested in either the trust's income or the principal.  Any such increased commissions shall be paid from and charged to the trust's income.

10.5  No Trustee acting under this agreement shall be responsible for any error of judgment or mistake of fact or law. Each Trustee shall be fully protected for any action taken in good faith, in accordance with the advice of counsel, or in reliance thereon.  No Trustee acting hereunder shall be responsible for the act, default or omission of any other Trustee, nor for the default or misconduct of any agent or attorney appointed by the Trustee, or any of them, except that any corporate Trustee shall be liable for the default or misconduct of its own agents, officers or employees.  Each Trustee shall be liable only for his, her or its own willful misconduct or gross negligence.  Each successor Trustee shall be excused from inquiring into the acts of his predecessor, or taking any action against his predecessor.

10.6  In connection with the continuation and operation of any business or interests owned by the Settlor prior to his death which become a part of any trust (whether by purchase by the Trustee or bequest under the Settlor's Will or otherwise), the Trustee is specifically authorized:

10.6.1  to invest additional sums in any such business even to the extent that the trust may be invested largely or entirely in that business;

26

      10.6.2  to hold the interest in any form, including but not limited to a general or limited partnership interest; and

      10.6.3  to act as or to select other persons to act as directors, officers, agents, or in other capacities with respect to the business, and to be compensated for those services (and for any other services rendered by them in respect of the operation of the business) without regard to serving as Trustee under this agreement.

## ELEVENTH:

### Adopted and Non-Marital Children

11.1  Only a child adopted before age eighteen (18) shall be deemed to be a natural child of the child's adoptive parent or parents for all purposes of this agreement, including determining the persons who are the children, grandchildren, issue or descendants of the Settlor or any other person.

11.2  A non-marital child shall be deemed a child of the mother but shall not be deemed a child of the father unless (i) the father is legally adjudicated to be the father of the child and (ii) the father delivers to the Trustee a written acknowledgment stating that the non-marital child is his child. Unless and until conditions (i) and (ii) have been satisfied, the child shall be excluded from receiving, using or benefitting from any part or all of any trust hereunder and any issue of the child shall not be deemed grandchildren, issue or descendants of the child or any other person.

TWELFTH:

Accountings

The Settlor, or if the Settlor is not living, then (i) the Settlor's spouse, or if she is not then living, (ii) any child of the Settlor, or if none of the Settlor's children are living, (iii) any adult who is at the time (a) a beneficiary entitled (contingently or otherwise) to receive income distributions from the trust, (b) a descendant of the Settlor, and (c) not then serving as a Trustee, may at any time or from time to time settle any Trustee's or former Trustee's accounts and to the extent permissible by law each settlement shall be binding and conclusive upon all persons who may be interested in the trust, whether directly or contingent, born or unborn, infant or adult.

THIRTEENTH:

Governing Law; Situs

13.1 Except as is provided in Section 13.2, all questions pertaining to the construction, validity and effect of this agreement and the trust hereby created shall, during the entire term thereof, be determined in accordance with the laws of the State of New York (even though not the state of the Settlor's domicile).

13.2 The Trustee of any trust existing under this agreement may at any time and from time to time (i) declare that the construction and effect of all or any portion of the trust shall from that date be determined in accordance with the law of

28

a different jurisdiction; provided the designated jurisdiction must be a jurisdiction (a) where a portion of the trust property or its indicia is located or is to be removed and (b) under the laws of which the trust (or the portion of the trust) would not be invalid or revocable, (ii) change the situs of the trust, and (iii) pay or transfer the whole or any part of the trust's income or principal to the trustee or trustees for the time being of any irrevocable trust under which the beneficiary or beneficiaries of the trust under this agreement (and no other person or persons) are the beneficiary or beneficiaries and the Settlor is not, by the terms of that trust or by separate effective instrument of renunciation cannot become, a trustee of that trust, to be held by that trustee or the trustees as an addition to the property held in that trust (freed and discharged from the trusts, powers and provisions of this agreement) whether or not the trustee or trustees of that trust are domiciled or resident in New York or the United States (or in such other place to which this trust shall have been previously removed), or whether or not the trust is governed by the laws of New York or the United States (or by such other place to which this trust shall have been previously removed), and the receipt of such trustee or trustees shall constitute full discharge of the Trustee.

FOURTEENTH:

Irrevocability

    The Settlor declares this agreement and the trusts created by it to be irrevocable.

FIFTEENTH:

<u>Acceptance by Trustee</u>

The Trustee, by joining in the execution of this agreement, signifies his acceptance of the trusts hereby created.

SIXTEENTH:

<u>Trust Designation</u>

The Trust shall be known as the "Kodsi Family Trust" or such other designation as the Trustee may from time to time determine.

<u>Execution</u>

IN WITNESS WHEREOF, the Settlor and the Trustee have executed this agreement on the day and year first above written.

_____
Alain Kodsi, Settlor

_____
Antonio J. Gracias, Trustee

STATE OF NEW YORK      )
                       : ss.:
COUNTY OF NEW YORK     )


        On December **31**, 1997, before me personally came ALAIN
KODSI, to me known and known to me to be one of the persons
described in and who executed the foregoing instrument, and he
acknowledged to me that he executed the same.

                                    _____
                                    Notary Public

                                    STEVEN ETKIND
                                    Notary Public, State of New York
                                    No. 4999500
                                    Qualified in Rockland County
                                    Commission Expires July 27, 19__

STATE OF       **NY**   )
                        : ss.:
COUNTY OF      **NY**   )


        On December **31**, 1997, before me personally came ANTONIO
J. GRACIAS, to me known and known to me to be one of the persons
described in and who executed the foregoing instrument, and he
acknowledged to me that he executed the same.

                                    _____
                                    Notary Public

                                    STEVEN ETKIND
                                    Notary Public, State of New York
                                    No. 4999500
                                    Qualified in Rockland County
                                    Commission Expires July 27, 19__

——————————————————————————— x
                                                        :    **TRUSTEE'S**
In the Matter of the Kodsi Family Trust created on          **DETERMINATION TO**
December 31, 1997, by Alain Kodsi as Settlor            :    **CHANGE THE NAME OF THE**
                                                             **TRUST**
                                                        :

——————————————————————————— x

        By Declaration of Trust dated December 31, 1997, Alain Kodsi created the Kodsi Family

Trust. Antonio Gracias, the original trustee, is still serving as the sole trustee.

        Under Article Sixteenth, the Trustee may designate a new name for the trust.

        The Trustee, pursuant to the power under Article Sixteenth, hereby changes the name of the

trust to the GAMCREFK trust.

        IN WITNESS WHEREOF, the Trustee has executed this instrument on July 13, 1999.

                                          _____
                                          Antonio Gracias, Trustee

```
--------------------------------------------------------------------- x
                                                    :   TRUSTEE'S  RESIGNATION
In the Matter of the GAMCREFK Trust, formally known
as the Kodsi Family Trust created on December 31, 1997,  :
by Alain Kodsi as Settlor and Antonio Gracias, as Trustee.
                                                    :
--------------------------------------------------------------------- x
```

By Declaration of Trust dated December 31, 1997, Alain Kodsi created the Kodsi Family Trust. Antonio Gracias, the original trustee, is still serving as the sole trustee.

On July 13th, 1999, pursuant to a power under Article Sixteenth, the Trustee designated a new name for the trust, the GAMCREFK trust.

The undersigned has been advised that the Settlor designated SCOTT GEDDES to serve as successor Trustee.

The Trustee, hereby resigns as Trustee, effective upon the appointment of SCOTT GEDDES as successor Trustee.

IN WITNESS WHEREOF, the Trustee has executed this instrument on March 2_7_, 2000.

1

_____
Antonio Gracias, Trustee

STATE OF                    )
                           :  ss.:
COUNTY OF                   )


On the 28th day of March in the year 2000 before me, the
undersigned, a Notary Public in and for said State, personally
appeared Antonio Gracias personally known to me or proved to me on
the basis of satisfactory evidence to be the individual whose name
is subscribed to the within instrument and acknowledged to me that
he executed the same in his capacity, and that by his signature on
the instrument, the individual, or the person upon behalf of which
the individual acted, executed the instrument.

```
OFFICIAL SEAL
HELEN M. MENTEL
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 8-19-2001
```

Notary Public _____

Receipt Acknowledged:

_____
Alain Kodsi

_____
SCOTT GEDDES

2

```
-------------------------------------------------------------- x
                                                    :   DESIGNATION OF
In the Matter of the GAMCREFK Trust, formally known     SUCCESSOR TRUSTEE
as the Kodsi Family Trust created on December 31, 1997,  :
by Alain Kodsi as Settlor and Antonio Gracias, as Trustee.
                                                    :
-------------------------------------------------------------- x
```

By Declaration of Trust dated December 31, 1997, Alain Kodsi created the Kodsi Family Trust. Antonio Gracias, the original trustee, is still serving as the sole trustee.

On July 13th, 1999, pursuant to a power under Article Sixteenth, the Trustee designated a new name for the trust, the GAMCREFK trust.

On January 15th, 1998, the Settlor designated EMAD H. KHALIL to serve as successor Trustee to Antonio Gracias. The Settlor hereby revokes the Januray 15, 1998 designation, and designates SCOTT GEDDES to serve as successor Trustee.

IN WITNESS WHEREOF, the Settlor has executed this instrument on March 27, 2000.

_____
Alain Kodsi

1

```
STATE OF   NEW YORK   )
                      :  ss.:
COUNTY OF  NEW YORK   )
```

On the 21th day of March in the year 2000 before me, the undersigned, a Notary Public in and for said State, personally appeared Alain Kodsi personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

OFFICIAL SEAL
HELEN M. MENTEL
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 8-19-2001

Notary

Receipt Acknowledged:

Antonio Gracias

2

```
-------------------------------------------------------------------- x
                                                    :   DESIGNATION OF
In the Matter of the GAMCREFK Trust, formally known      SUCCESSOR TRUSTEE
as the Kodsi Family Trust created on December 31, 1997,  :
by Alain Kodsi as Settlor and Antonio Gracias, as Trustee.
                                                    :
-------------------------------------------------------------------- x
```

By Declaration of Trust dated December 31, 1997, Alain Kodsi created the Kodsi Family Trust. Antonio Gracias, the original trustee, is still serving as the sole trustee.

On July 13th, 1999, pursuant to a power under Article Sixteenth, the Trustee designated a new name for the trust, the GAMCREFK trust.

On January 15th, 1998, the Settlor designated EMAD H. KHALIL to serve as successor Trustee to Antonio Gracias. The Settlor hereby revokes the Januray 15, 1998 designation, and designates SCOTT GEDDES to serve as successor Trustee.

IN WITNESS WHEREOF, the Settlor has executed this instrument on March 27, 2000.

_____
Alain Kodsi

1

```
STATE OF  NEW YORK   )
                     :  ss.:
COUNTY OF NEW YORK   )
```

On the 21th day of March in the year 2000 before me, the undersigned, a Notary Public in and for said State, personally appeared Alain Kodsi personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

**OFFICIAL SEAL**
**HELEN M. MENTEL**
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 8-19-2001

Notary _____

Receipt Acknowledged:

_____
Antonio Gracias

2

```
------------------------------------------------------------------- x
                                                      :   ACCEPTANCE OF
In the Matter of the GAMCREFK Trust, formally known       TRUSTEESHIP
as the Kodsi Family Trust created on December 31, 1997,  :
by Alain Kodsi as Settlor and Antonio Gracias, as Trustee.
                                                      :
------------------------------------------------------------------- x
```

By Declaration of Trust dated December 31, 1997, Alain Kodsi created the Kodsi Family Trust. Antonio Gracias, the original trustee, is still serving as the sole trustee.

On July 13th, 1999, pursuant to a power under Article Sixteenth, the Trustee designated a new name for the trust, the GAMCREFK trust.

The Settlor has designated JON SCOTT GEDDES to serve as successor Trustee.

I JON SCOTT GEDDES do hereby accept the position as Trustee, effective upon the resignation of ANTONIO GRAIAS as Trustee, and agree to act as such.

IN WITNESS WHEREOF, the undersigned has executed this instrument on March 27, 2000.

JON SCOTT GEDDES

1

STATE OF PA )
            : ss.:
COUNTY OF Delaware )

On the 28th day of March in the year 2000 before me, the undersigned, a Notary Public in and for said State, personally appeared JON SCOTT GEDDES personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

Notarial Seal
Nicole A. Russell, Notary Public
Marple Twp., Delaware County
My Commission Expires Feb. 18, 2002
Member, Pennsylvania Association of Notaries

Receipt Acknowledged:

_____
Antonio Gracias

_____
Alain Kodsi

---------------------------------------------------------------- x
                                          :   ACCEPTANCE OF

In the Matter of the GAMCREFK Trust, formally known   :   TRUSTEESHIP
as the Kodsi Family Trust created on December 31, 1997,   :
by Alain Kodsi as Settlor and Antonio Gracias, as Trustee.
                                            :

---------------------------------------------------------------- x

      By Declaration of Trust dated December 31, 1997, Alain Kodsi created the Kodsi Family

Trust. Antonio Gracias, the original trustee, is still serving as the sole trustee.

      On July 13th, 1999, pursuant to a power under Article Sixteenth, the Trustee designated a

new name for the trust, the GAMCREFK trust.

      The Settlor has designated JON SCOTT GEDDES to serve as successor Trustee.

      I JON SCOTT GEDDES do hereby accept the position as Trustee, effective upon the

resignation of ANTONIO GRAIAS as Trustee, and agree to act as such.

      IN WITNESS WHEREOF, the undersigned has executed this instrument on March 27,
2000.

                                                  _____
                                        JON SCOTT GEDDES

1

STATE OF PA )
: ss.:
COUNTY OF Delaware

On the 28th day of March in the year 2000 before me, the undersigned, a Notary Public in and for said State, personally appeared JON SCOTT GEDDES personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

Notarial Seal
Nicole A. Russell, Notary Public
Marple Twp., Delaware County
My Commission Expires Feb. 18, 2002
Member, Pennsylvania Association of Notaries

Receipt Acknowledged:

_____
Antonio Gracias

_____
Alain Kodsi

```
------------------------------------------------------------ x
                                                             :    TRUSTEE'S   RESIGNATION
In the Matter of the GAMCREFK Trust, formally known
as the Kodsi Family Trust created on December 31, 1997,      :
by Alain Kodsi as Settlor and Antonio Gracias, as Trustee.
                                                             :
------------------------------------------------------------ x
```

By Declaration of Trust dated December 31, 1997, Alain Kodsi created the Kodsi Family

Trust. On July 13th, 1999, pursuant to a power under Article Sixteenth, the Trustee designated a new

name for the trust, the GAMCREFK trust.


The undersigned has been advised that the Settlor designated Neuberger Berman Trust

Company to serve as successor Trustee.


The Trustee, hereby resigns as Trustee, effective upon the acceptance of Neuberger Berman

as successor Trustee.


IN WITNESS WHEREOF, the Trustee has executed this instrument on ~~June~~ August 7, 2001.

Scott Geddes, Trustee

Date: 7 August 2001

The Undersigned hereby Agrees to serve as Trustee:

Neuberger Berman Trust Company

By:_____

    Name:
    Title:


Receipt Acknowledged:


_____
Alain Kodsi

STATE OF    *PA*              )
                             : ss.:
COUNTY OF  *Chester*          )


On the *7th* day of August in the year 2001 before me, the undersigned, a Notary Public in and for said State, personally appeared Scott Geddes personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


_____
Notary Public

> Notarial Seal
> Carole M. Casadonti, Notary Public
> Tredyffrin Twp., Chester County
> My Commission Expires May 3, 2004
> Member, Pennsylvania Association of Notaries


STATE OF              )
                     : ss.:
COUNTY OF            )

On the *7th* day of                    in the year                    before me, the undersigned, a Notary Public in and for said State, personally appeared                    , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.


_____
Notary Public


3

```
-------------------------------------------------------------- x
                                                               :   DESIGNATION OF
In the Matter of the GAMCREFK Trust, formally known            :   SUCCESSOR TRUSTEE
as the Kodsi Family Trust created on December 31, 1997,        :
by Alain Kodsi as Settlor and Antonio Gracias, as Trustee.     :
                                                               :
-------------------------------------------------------------- x
```

By Declaration of Trust dated December 31, 1997, Alain Kodsi created the Kodsi Family Trust.

On July 13th, 1999, pursuant to a power under Article Sixteenth, the Trustee designated a new name for the trust, the GAMCREFK trust.

On January 15th, 1998, the Settlor designated EMAD H. KHALIL to serve as successor Trustee to Antonio Gracias. The Settlor previously revoked the January 15, 1998 designation, and designated SCOTT GEDDES to serve as successor Trustee, who is presently serving as Trustee. The Settlor hereby designates Neuberger Berman Trust Company to serve as successor Trustee to SCOTT GEDDES to become effective upon its acceptance of the same.

IN WITNESS WHEREOF, the Settlor has executed this instrument on ~~June~~ July 3, 2001.

_____
Alain Kodsi

1

Sent By: ;                          6103993898;           Jul-3-01 15:36;        Page 2/2
Received:  7/ 3/01 11:49                              Jul-3-01 3:36PM
     JUL. 3. 2001  2:27PM                                          NO. 2937  P. 3

Case 1:04-cv-03994-GEL     Document 11-7     Filed 07/26/2004     Page 47 of 57

STATE OF  NEW YORK   )
                     :  ss.:
COUNTY OF NEW YORK   )


     On the 3 day of June in the year 2001 before me, the
undersigned, a Notary Public in and for said State, personally
appeared Alain Kodsi personally known to me or proved to me on the
basis of satisfactory evidence to be the individual whose name is
subscribed to the within instrument and acknowledged to me that he
executed the same in his capacity, and that by his signature on
the instrument, the individual, or the person upon behalf of which
the individual acted, executed the instrument.


                                        _____
                                            Notary Public


Receipt Acknowledged:

_____

Scott Geddes

                              STEVEN ETKIND
                         Notary Public, State of New York
                                 No. 4999600
                         Qualified in Rockland County
                    Commission Expires July 27, 18  2002

                              2

## GAMCREFK TRUST

## RECEIPT, RELEASE, INDEMNITY AND REFUNDING AGREEMENT

WHEREAS:

1.     In an agreement (the "Trust Agreement") dated December 31, 1997 Alain Kodsi, as settlor (the "Settlor"), created an irrevocable trust for the primary benefit of his mother, wife and descendants (the "GAMCREFK Trust" or the "Trust") naming Antonio J. Gracias as original trustee.

2.     On March 27, 2000, Antonio J. Gracias resigned as Trustee, and Scott Geddes was designated and accepted his appointment as Trustee in his place.

3.     On July 3, 2001, Neuberger Berman Trust Company of Delaware ("NB Trust of DE"), was appointed as successor trustee by Settlor effective upon the resignation of Scott Geddes. Scott Geddes resigned as trustee on August 7, 2001.

4.     Pursuant to Paragraph 6.9 of the Trust Agreement, by instrument dated April 26, 2004, NB Trust of DE resigned as trustee.

5.     Pursuant to Pargarah 6.1 of the Trust Agreement, by the same instrument, the Settlor designated Louis Greco as successor trustee. Mr. Greco accepted his appointment the same day.

6.     Georgette Kodsi, the Settlor's mother, Rachel Foster, the Settlor's wife and the Settlor's descendants are the current discretionary income and principal beneficiaries of the Trust. Georgette Kodsi has a testamentary power of appointment over the Trust assets (the "Property") limited to her issue and the spouses of her issue, which power is extinguished upon the Settlor's death. The Settlor has a testamentary power of appointment over the Property limited to any person other than the Settlor, his

estate, his creditors or the creditors of his estate. Subject to or in default of any such appointment by the Settlor, upon the Settlor's death the trust property shall be held in continuing trusts for the benefit of his wife and descendants. Hereinafter Georgette Kodsi, Rachel Foster and the Settlor's three children shall be referred to collectively as the "Beneficiaries". Rachel Foster and the Settlor will be executing this document on behalf of him/herself and as natural guardians for their minor children. Georgette Kodsi will be signing on behalf of herself and the Settlor's unborn descendants.

7.      The Settlor and the Beneficiaries, in order to avoid the expense and delay incident to a formal judicial settlement of the account of NB Trust of DE have requested that NB Trust of DE settle its account and transfer all the Property upon this Receipt, Release, Indemnity and Refunding Agreement in lieu of a judicial settlement of the account of NB Trust of DE and have agreed to waive any rights they may have to a so-called formal accounting.

8.      NB Trust of DE has provided the Settlor and the Beneficiaries with periodic account statements for the Trust from August 1, 2001 through April 23, 2004 (the "Report Date"). Further NB Trust of DE has afforded the Settlor and the Beneficiaries an opportunity to inquire into all of the acts and proceedings of NB Trust of DE and the administration of the Trust for that period as reflected in the books and records of NB Trust of DE (the "Trust Records").

9.      NOW THEREFORE, intending to be bound at law and in equity, and intending to bind the Settlor and the Beneficiaries, and each of their heirs, successors and assigns, and all others, now living and hereafter born, claiming any interest in the Trust or the Property by or through the undersigned, in consideration of (i) the service of

2

NB Trust of DE as Trustee of the Trust and (ii) the agreement of NB Trust of DE to transfer the Property to the successor trustee, subject to proper adjustments for receipts, disbursements and other transactions concerning the Trust occurring after the Report Date:

   A.  Rachel Foster hereby acknowledges receipt of the income and principal payments made to her as reflected in the Trust Records.

   B.  Each of the Settlor and the Beneficiaries does hereby approve the payments to Rachel Foster and the payment of all trustee commissions, investment management fees, legal fees, accounting fees, taxes and administrative expenses and debts of the Trust, if any, as reflected in the Trust Records.

   C.  Each of the Settlor and Beneficiaries does hereby (i) acknowledge that he or she has been afforded an opportunity to examine the Trust Records and to inquire into all of the acts and proceedings of NB Trust of DE and the administration of the Trust through the Report Date, (ii) ratify, confirm and approve all of the transactions, acts and proceedings of NB Trust of DE as reflected in the Trust Records, and (iii) agree that there are no errors or omissions in the Trust Records to the prejudice of any party having an interest in the Trust and that NB Trust of DE has fully and fairly accounted for all monies and other property which came or should have come into its hands as such Trustee.

   D.  Each of the Settlor and the Beneficiaries does for himself or herself, his or her heirs, executors, administrators, and his or her successors and assigns remise, release and forever discharge NB Trust of DE (including its successors and assigns, and its past and present directors, officers, agents, servants, employees, parent

entities, subsidiary entities, predecessor entities, affiliated entities, attorneys, accountants, advisers and other agents), as Trustee (hereinafter referred to as the "Releasees"), of and from all, and all manner of, past, present, and future claims, demands, actions and causes of action, debts, dues, sums of money, accounts, obligations, reckonings, bonds, covenants, warrants, contracts, controversies, agreements, promises, commissions, attorneys' fees, costs, damages, whether compensatory, consequential, punitive or exemplary, liens, judgments, executions, third party actions and causes of action, and any and all suits at law, or in equity, whether based upon the terms of the agreement creating the Trust, trust or general fiduciary law, contract, tort, common law, statutory law or otherwise, including subrogation claims, claims for contribution or indemnity, and liabilities of any kind or nature whatsoever relating in any way to the Trust, or any and all contacts or relationships (whether or not of a fiduciary nature) between or involving the undersigned and the Releasees. It is also understood and agreed that this Receipt, Release, Indemnity and Refunding Agreement is a full and final release of all claims and liabilities of any kind as described herein whether known or unknown, manifested or unmanifested, due or to become due, absolute or contingent, liquidated or unliquidated.

     E.     Each of the Settlor and the Beneficiaries does further agree and hereby undertake to indemnify and hold harmless each Releasee from and against any and all liability, cost, and expense at any time hereafter incurred by any Releasee by reason of acting in a fiduciary or non-fiduciary capacity with respect to the Trust, by reason of holding legal title to the Property, or in any way arising from or related to, the Trust or the Property, including, without limitation, by reason of any claim or action which may be brought against any Releasee by the Settlor or any beneficiary of the Trust.

F.      Each of the Settlor and Beneficiaries does hereby (i) waive all right to judicial settlement of the account of NB Trust of DE, (ii) represent that he or she has not assigned or encumbered his or her interest or any part thereof in the Trust, (iii) declare, warrant and represent that no promise, inducement, representation or agreement not expressly stated herein has been made to the Settlor and Beneficiaries in connection with this Receipt, Release, Indemnity and Refunding Agreement, (iv) agree that this Receipt, Release, Indemnity and Refunding Agreement contains the entire agreement among the Settlor and the Beneficiaries and the Releasees, and (v) agree that the terms of this Receipt, Release and Indemnity Agreement are contractual and not a mere recital.

G.      The successor trustee agrees to be responsible for the preparation, execution and filing of the 2004 Fiduciary Income Tax Return for the Trust. NB Trust of DE will provide any information and supporting documentation it may have or receive, to the successor trustee to facilitate the tax preparation.

H.      The successor trustee agrees to assume and pay all taxes and other liabilities and expenses related to the Trust for which NB Trust of DE may hereafter be personally liable, to the extent NB Trust of DE would have been entitled to be reimbursed from the property had such property remained in the possession of NB Trust of DE. The successor trustee agrees to reimburse NB Trust of DE for any expenses of recovery, including reasonable attorney's fees, and any additional expenses of administration, which may arise out of or in connection with its service as trustee.

I.      The Settlor agrees to take the steps necessary to be in compliance with any orders issued by the Illinois Court, Cook County, in connection with the pending lawsuit initiated by Brian Sullivan as they pertain to the Trust.

J.      This Receipt, Release, Indemnity and Refunding Agreement shall be governed by the laws of the State of Delaware.

K.      This Receipt, Release, Indemnity and Refunding Agreement may be signed in counterparts, each of which, when taken together, shall constitute the entire agreement binding all the parties hereto.

IN WITNESS WHEREOF and intending to be legally bound, the undersigned have signed this Receipt, Release, Indemnity and Refunding Agreement as this        day of April, 2004 .

Alain Kodsi, Individually and as Natural
Guardian for his Children

Georgette Kodsi, Individually and on behalf
of the Unborn Beneficiaries

Rachel Foster, Individually and as Natural
Guardian for her Children

Louis Greco, Successor Trustee

STATE OF  NY  )

COUNTY OF  Kings  : ss.:  )

On the  26  day of April, in the year 2004, before me, the undersigned, personally appeared Alain Kodsi, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual executed the instrument.

_____
Notary Public

HARRY HELFENBAUM
Commissioner of Deeds
City of New York No. 5-453
Certificate Filed in Richmond County
Commission Expires June 30, 20__

STATE OF  NY  )

COUNTY OF  Kings  : ss.:  )

On the  26  day of April, in the year 2004, before me, the undersigned, personally appeared Georgette Kodsi, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in his capacity, and that by her signature on the instrument, the individual executed the instrument.

_____
Notary Public

HARRY HELFENBAUM
Commissioner of Deeds
City of New York No. 5-453
Certificate Filed in Richmond County
Commission Expires June 30, 20__

7

STATE OF                  )
                                  : ss.:
COUNTY OF   KINGS    )

On the    26th  day of April, in the year 2004, before me, the undersigned, personally appeared Rachel Foster, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual executed the instrument.

                                                      _____ 4/26/04
Notary Public

KAMAL P. SONI
Notary Public, State Of New York
No.01SO6089949
Qualified in Kings County
Commission Expires March 31, 2007

STATE OF                  )
                                  : ss.:
COUNTY OF             )

On the        day of April, in the year 2004, before me, the undersigned, personally appeared Louis Greco, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual executed the instrument.

                                        _____
Notary Public

RAYMOND F. SCHULTZ
Notary Public, State of New York
No. 41-01SC4774543
Qualified in Queens County
Commission Expires Oct. 31, 2006

8

## APPOINTMENT OF SUCCESSOR TRUSTEE

WHEREAS, Neuberger Berman Trust Company of Delaware has resigned as trustee of the GAMCREFK Trust.

NOW, THEREFORE, pursuant to Article 6.1 of the Trust Agreement, the Settlor hereby appoints Louis Greco as Successor Trustee effective immediately upon his acceptance.

Dated: April 26, 2004

_____
Alan Kodsi


STATE OF NEW YORK          )
                           : ss.:
COUNTY OF NEW YORK   )


On this, the 26 day of April, 2004, before me personally appeared Alan Kodsi, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual executed the instrument.

_____
Notary Public

HARRY HELFENBAUM
Commissioner of Deeds
City of New York-No.5-883
Certificate Filed in Richmond County
Commission Expires June 30, 20 0 ⁄

## ACCEPTANCE OF APPOINTMENT

Louis Greco hereby accepts appointment as Successor Trustee of the GAMCREFK Trust.

Dated: April 26 , 2004

_____
Louis Greco


STATE OF NEW YORK      )
         : ss.:
COUNTY OF NEW YORK  )


On this, the _____ day of April, 2004, before me personally appeared Louis Greco, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual executed the instrument.

_____
Notary Public

RAYMOND F. SCHULTZ
Notary Public, State of New York
No. 41-01SC4774543
Qualified in Queens County
Commission Expires Oct. 31, 2006