UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

BRIAN T. SULLIVAN,                                          :

                             Plaintiff,          :          04 CV 3994 (GEL) (JCF)

       -- against --                                      :

ALAIN KODSI; LOUIS GRECO, individually         :
and as successor trustee of the Gamcrefk Trust;
the GAMCREFK TRUST; GEORGETTE              :
KODSI; and RACHEL FOSTER, individually
and as guardian of her children,                          :

                       Defendants.        :

-----------------------------------------------------------------x

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Jonathan A. Willens, Esq. (JW-9180)
JONATHAN A. WILLENS LLC
217 Broadway, Suite 707
New York, New York 10007
Tel. (212) 619-3749
*Attorney for the Defendants*

TABLE OF CONTENTS

PRELIMINARY STATEMENT     ……..…………………………………………….. 1

STATEMENT OF FACTS   ………………………………………………………… 3

    A.  The Complaint   ………………………………………………………… 3

    B.  The Sullivan Litigation …………………………………………………… 4

ARGUMENT     ……………………………………………………………….. 5

POINT I

THE FIRST AND THIRD CLAIMS
UNDER DCL § 276 MUST BE DISMISSED     ……………………..………………… 5

    A.  The Standard on a Motion to Dismiss   ………………….………………. 5

    B.  The Burden of Proof   ……………………………………………………. 7

    C.  The Statute of Limitations  …………………………….…………………. 7

    D.  The Claims under Section 276 Fail to Satisfy
        the Pleading Requirements of Rule 9(b)     ……………..…………………. 8

        1.  The Complaint Makes Key Allegations on "Information and Belief"  ….… 9

        2.  The Complaint Fails to State the Factual Basis for Plaintiff's Beliefs   ….. 10

        3.  Other than the Connector Service Transfer, the Complaint
           Does Not Sufficiently Identify Any Fraudulent Transfer     ……………. 11

        4.  The Alleged Facts Do Not Give Rise
           to a Strong Inference of Fraudulent Intent     …………………………. 12

POINT II

THE SECOND AND FOURTH CLAIMS
UNDER DCL § 273 MUST BE DISMISSED  ……………………………………….. 16

    A.  The Complaint Fails to Allege Insolvency     …………..………………. 16

    B.  The Complaint Fails to State a Claim Against Ms. Kodsi or Ms. Foster   ….. 20

POINT III

PLAINTIFF'S CLAIMS FOR DAMAGES SHOULD BE STRICKEN    …………… 21

A.  The Rights of a Creditor With No Mature Claim Are Limited By Section 279    ….. 21

B.  Plaintiff Has No Claim for Punitive Damages    ………………………………….. 22

CONCLUSION    ………………………………………………………………….. 23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
BRIAN T. SULLIVAN,                          :

                       Plaintiff,          :          04 CV 3994 (GEL) (JCF)

     -- against --                          :

ALAIN KODSI; LOUIS GRECO, individually      :
and as successor trustee of the Gamcrefk Trust;
the GAMCREFK TRUST; GEORGETTE            :
KODSI; and RACHEL FOSTER, individually
and as guardian of her children,             :

                    Defendants.         :
------------------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

       Defendants Alain Kodsi, Louis Greco, the GAMCREFK Trust, Georgette Kodsi and Rachel

Foster respectfully submit this memorandum of law in support of their motion, pursuant to Rules

12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, to dismiss the complaint.

<u>Preliminary Statement</u>

       This action grows out of a dispute between plaintiff Brian Sullivan and defendant Alain

Kodsi, who worked together briefly in 1997 and 1998 in Chicago.  In early 2000, Sullivan filed an

action in Illinois state court based, in part, on an alleged oral contract that gave Sullivan a "right to

invest in a company known as Industrial Powder Coatings, Inc."  *See* Complaint, ¶¶ 34-35.[1]

Claiming that he was wrongfully "excluded from this investment," Sullivan alleges in the Illinois

action that Mr. Kodsi owes him "at least $13 million" in damages.  *Id.*, ¶¶ 35-36.  No trial has taken

---

[1]     *See* Summons and Complaint, attached to the Declaration of Jonathan A. Willens (the
"Willens Dec."), dated July 23, 2004, as Exhibit A.

place in the Illinois case, there has been no decision on the merits, and no judgment has been awarded to Mr. Sullivan.

Clinging to this thin reed, Sullivan now brings this action under New York's fraudulent conveyance laws against Mr. Kodsi and four other defendants.[2] He seeks to freeze the assets of a family trust created by Mr. Kodsi in December 1997 – several months before the alleged breach of contract in the Illinois case, and more than two years before that case was filed. More surprising, Sullivan seeks "entry of a money judgment" *for the full amount of his unresolved action in Illinois*. *See* Complaint at 11. As explained below, Sullivan has no legal right to any relief under New York law, and certainly not to payment of damages on a hotly disputed claim that is pending before another court. Sullivan also seeks punitive damages based on "the willful, wanton, malicious and reckless disregard of the rights of Sullivan and other creditors," *id*., ¶ 12, even though the only acts alleged in the complaint are (i) the creation of a family trust, and (ii) the transfer of stock to that trust. This claim, too, must be dismissed.

If this case ever reaches the merits, Mr. Kodsi will demonstrate that he created the family trust for perfectly legitimate reasons. Long before Sullivan became his "creditor," *see* Complaint, ¶ 37, Mr. Kodsi decided to create a trust to provide support for his children. The trust was designed, on the advice of counsel, to reduce the New York state tax liability relating to the purchase and sale of several companies. And, like any other trust, or business corporation, or limited liability company, the Kodsi family trust also served to "insulate [Kodsi's] investments from any business activities that [Kodsi] was involved with." Complaint, ¶ 46.

Sullivan must not be allowed to transform these legal, legitimate transactions into a "fraudulent conveyance." The complaint should be dismissed.

---

[2]    Sullivan has also recently filed similar actions against Mr. Kodsi in federal court in Delaware and in state court in Pennsylvania. *See* Willens Dec., ¶ 7.

STATEMENT OF FACTS

A.  <u>The Complaint</u>

The Complaint in this action was filed on May 26, 2004.  It asserts claims under the New York Debtor and Creditor Law ("DCL") against five defendants: Alain Kodsi, Georgette Kodsi (Alain's mother), Rachel Foster (Alain's wife), the GAMCREFK Trust and its current trustee, Louis Greco.  The complaint purports to sue Mr. Greco both individually and as trustee of the Trust, although he became trustee only a few weeks before the action was filed.  *See* Complaint, ¶ 26.  It also purports to sue Ms. Foster individually and as guardian of her children.  Ms. Kodsi, Ms. Foster and her children are identified as beneficiaries of the Trust.  *Id.*, ¶¶ 15-17.

The complaint alleges that Mr. Kodsi made a series of "transfers to the Trust" between December 1997 and June 2000.  *See* Complaint, ¶ 18.  Only one of those transfers is identified in the complaint: the transfer of Mr. Kodsi's interest in Connector Service Corporation in June 2000.  *Id.,* ¶ 19.  According to the complaint, the Trust later sold that interest for more than $20 million in February 2001.  *Id.,* ¶ 22.

In February 2000, Sullivan filed an action in Illinois state court alleging that Kodsi entered into an oral contract giving Sullivan a "right to invest in a company known as Industrial Powder Coatings, Inc."  *See* Complaint, ¶¶ 34-35. [3]  Sullivan alleges in the Illinois action that Mr. Kodsi owes him "at least $13 million" in damages.  *Id.*, ¶¶ 35-36.  No trial has taken place in the Illinois case, there has been no decision on the merits, and no judgment has been awarded to Mr. Sullivan.

---

[3]    A copy of the complaint in the Illinois Action is attached to the Willens Declaration as Exhibit B.  On a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any documents that are either incorporated in the complaint by reference or relied upon by the plaintiff in making his allegations.  *Travelers Indem. Co. of Illinois v. CDL Hotels USA, Inc*., No. 03 Civ. 0716(MBM), 2004 WL 1396157, *2 (S.D.N.Y. 2004); *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir. 2000); *Cortec Industries, Inc. v. Sum Holding L.P*., 949 F.2d 42 (2d Cir. 1991).  Here the complaint expressly relies on three documents: the Trust Agreement, the deposition of Alain Kodsi, and the complaint in the Illinois Action.

To satisfy one element of the fraudulent conveyance statute, the complaint alleges that Mr. Kodsi "was insolvent or became insolvent" at the time of the Connector Service Transfer. *See* Complaint, ¶ 45. However, the complaint also alleges that Mr. Kodsi had a net worth of $100,000 in January 2001, six months after that transfer, and that he retains access to the assets held in the Trust to pay his living expenses and other obligations. *Id., ¶¶* 38-39. The only "debt" that Mr. Kodsi allegedly cannot pay is the $13 million claim in the unresolved Illinois case. *Id.* ¶ 42.

Finally, the complaint alleges that Mr. Kodsi created the Trust in order to defraud his creditors. *See* Complaint, ¶ 50. This allegation is based, in part, on testimony provided by Mr. Kodsi in the Illinois case in April 2002. The transcript of that testimony is attached to the Willens Declaration as Exhibit C. Mr. Kodsi did not testify that he intended to shield assets from his creditors. *See* Willens Dec., Ex. C at 376-77.

The fraud claim is also based on Sullivan's allegation that Mr. Kodsi "retains control of, and the benefit of, the assets held in the Trust." *See* Complaint, ¶ 39. This allegation is contradicted by the Trust Agreement, which is attached to the Willens Declaration as Exhibit D. As explained below, Mr. Kodsi is not a beneficiary of the Trust and has no interest of any kind in the assets of the Trust. Unlike the "asset protection trusts" commonly used by defendants who are trying to hide their assets, the Kodsi family trust is a permanent, irrevocable trust established for the benefit of Mr. Kodsi's family before Sullivan had any claim against him. *See* Willens Dec., ¶¶ 9-10.

## B. The Sullivan Litigation

This action is one small part of a long-running dispute that is now pending in four courts. In the Illinois case, in addition to his claim for damages estimated at $13 million for the breach of an alleged oral contract, Sullivan also asserts claims under Illinois fraudulent conveyance laws for some of the same relief that he seeks here: an order freezing the assets of the trust and attaching those

assets to satisfy any judgment in the Illinois case.   Willens Dec., Ex. B, ¶¶ 148-177. [4]  Although the court recently declined to dismiss those fraudulent conveyance claims, Sullivan's motion for a pre-judgment attachment of trust assets was denied.  Willens Dec., ¶ 4.

Sullivan has also sued Mr. Kodsi in federal court in Delaware, where one of the previous trustees of the GAMCREFK Trust is located.  That action is in its early stages and the court has entered no ruling on the merits.  Finally, Sullivan sued Mr. Kodsi and another former trustee of the family trust in state court in Pennsylvania.  Both of these actions assert claims under the fraudulent conveyance laws based the same unspecified transfers to the trust.  Willens Dec., ¶ 7.

It is apparent that Sullivan is attempting to use this Court and the courts in Delaware and Pennsylvania to increase the litigation expenses of Mr. Kodsi and the trust, and to enhance the nuisance value of his baseless action in Illinois.

## ARGUMENT

### POINT I

### THE FIRST AND THIRD CLAIMS UNDER DCL § 276 MUST BE DISMISSED

A.  The Standard on a Motion to Dismiss

On a motion to dismiss a complaint, the Court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  *See Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir. 2001).  Because a motion to dismiss assesses the legal feasibility of the complaint, a plaintiff must allege facts that, if true, constitute a cause of action.  *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292 (2d Cir. 2003).  "While the pleading

---

[4]      The oral agreement is described paragraph 16 of Exhibit B.  The agreement is described alternately as a partnership agreement, a joint venture agreement, an employment agreement, and a contract.  *See* Ex. B, ¶¶ 65, 95, 124, 129.  This is the Fourth Amended Complaint in the Illinois case. The three previous complaints were dismissed by the court.

standard is a liberal one, bald assertions and conclusions of law will not suffice." *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir. 1996). "A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir. 1996).

As this Court held in *United Feature Syndicate v. Miller Features Syndicate*, 216 F. Supp.2d 198, 220 (S.D.N.Y. 2002), a plaintiff asserting fraudulent conveyance claims must satisfy "the heightened pleading requirements of Fed. R. Civ. P. 9(b)." Applying Rule 9(b), the Second Circuit upheld the dismissal of a fraudulent conveyance claim brought under Section 276 of the Debtor and Creditor Laws, which applies to conveyances made with the intent to "hinder, delay or defraud either present or future creditors," because "all three means of damaging creditors are within a general category that the statute categorizes as 'fraudulent.'" *Atlanta Shipping Corp., Inc. v. Chemical Bank,* 818 F.2d 240, 251 (2d Cir. 1987) (quoting DCL § 276).

Under Rule 9(b), allegations of fraud must be pleaded with particularity. "This exception to the generally liberal standard of pleading set forth in Fed. R. Civ. P. 8 helps to ensure that defendants receive fair notice of allegations of fraud and to protect them from the harm to reputation or goodwill that can result from such allegations." *United Feature Syndicate,* 216 F. Supp.2d at 221. Therefore, to survive a motion to dismiss, a complaint subject to Rule 9(b) must:

1) allege fraudulent conduct based on actual knowledge, and not on "information and belief;"

2) for facts peculiarly within the defendants' knowledge, provide a statement of the facts upon which plaintiff's belief is founded;

3) for each allegedly fraudulent act, specify the time, place, individuals involved and their conduct; and

    4) allege facts giving rise to a strong inference of fraudulent intent.

*Id.* (citing *Shields v. Citytrust Bancorp*, 25 F.3d 1124, 1128 (2d Cir. 1994) and *Luce v. Edelstein*, 802 F.2d 49, 54 n. 1 (2d Cir. 1986)).

## B. The Burden of Proof

The actual intent to defraud must be proven by clear and convincing evidence, and the burden of proof is on the party seeking to set aside the conveyance. *Hassett v. Goetzmann*, 10 F.Supp.2d 181, 188 (N.D.N.Y. 1998); *Farkas v. D'Oca*, 305 A.D.2d 237, 761 N.Y.S.2d 15 (1st Dept. 2003). The existence of actual intent to defraud is never presumed. Intent to defraud cannot be found "based merely on suspicion, conjecture, or doubtful inference." *Lippe v. Bairnco Corp.*, 249 F. Supp.2d 357, 375 (S.D.N.Y. 2003), *aff'd*, 2004 WL 1109846 (2d Cir. 2004); *Lowendahl v. Baltimore & Ohio R. Co.*, 247 A.D. 144, 287 N.Y.S. 62, 76 (1st Dep't), *aff'd*, 272 N.Y. 360, 6 N.E.2d 56 (1936).

## C. The Statute of Limitations

Under New York law, "a claim for constructive fraud under Debtor and Creditor Law § 273 is governed by the six-year Statute of Limitations, and arises at the time the fraud or conveyance occurs. A claim for actual fraud under Debtor and Creditor Law § 276 must be brought within six years of the fraud or conveyance, or within two years of discovery, whichever period is longer." *Bloomfield v. Bloomfield*, 280 A.D.2d 320, 721 N.Y.S.2d 15, 16 (1st Dept. 2001) (citing NY CPLR § 203(g) and 213(8)); see also *Avalon LLC v. Coronet Properties Co*., 306 A.D.2d 62, 762 N.Y.S.2d 48 (1st Dept. 2003).

Sullivan commenced this action on May 26, 2004. *See* Willens Dec., Ex. A. Therefore, any claim under DCL section 273 based on a conveyance that occurred before May 26, 1998, is time-barred. In addition, any claim under section 276 based on a conveyance that occurred before that

date is time-barred *unless* plaintiff demonstrates that he discovered the alleged fraud on or after May 26, 2002.[5]

These dates are important because, according to the complaint, "Kodsi formed the Kodsi Family Trust" (later renamed the "GAMCREFK Trust") on December 31, 1997. *See* Complaint, ¶ 10. Accordingly, any initial transfers to the trust at the time of its formation are outside the six-year limitations period. Further, the complaint alleges that "sometime between its formation and June of 2000, Kodsi transferred all or substantially all of his assets into the Trust." *Id.,* ¶ 18. Only one of these transfers is specifically alleged to have taken place within the limitations period: the so-called "Connector Service Transfer" in June 2000. *Id.,* ¶ 19. The others may well have taken place between December 1997 and May 26, 1998, outside the six-year limitations period. The complaint never identifies the parties involved in these transfers, the subject of the transfers, or their date. Nevertheless, plaintiff asserts fraudulent conveyance claims based on *all* of the transfers to the trust, regardless of when they took place.

D.  The Claims under Section 276 Fail to Satisfy the Pleading Requirements of Rule 9(b)

As noted above, Rule 9(b) imposes at least four special pleading rules on a plaintiff who asserts a claim for fraudulent conveyance under section 276, the "actual intent" statute. The first and third claims of the complaint allege that all of the defendants acted "with actual intent to hinder, delay and defraud Kodsi's creditors including Sullivan." *See* Complaint, ¶¶ 50, 59. Sullivan has not satisfied Rule 9(b) in his allegations against any of the defendants.

---

[5]     The complaint alleges that Kodsi testified about his transfers of assets to the Trust in April 2002. *See* Complaint ¶ 46; Willens Dec., Ex. C. Because this testimony occurred more than two years before the filing of this action, Sullivan will not be able to demonstrate that he "discovered" the alleged fraud within the two-year limitations period.

1.  <u>The Complaint Makes Key Allegations on "Information and Belief"</u>

In the first claim, Sullivan alleges that both Mr. Kodsi and Mr. Greco, the current trustee of

the Trust, are liable under section 276.  However, nearly all of the allegations against Mr. Greco are

asserted on information and belief.  After noting that Mr. Greco became trustee of the Trust only a

few weeks before the action was filed, on May 3, 2004, the complaint alleges:

> 29.  On information and belief, each of the trustees knew of Sullivan's dispute
> with and legal claims against Kodsi prior to becoming trustees.

> 30.  On information and belief, each of the trustees knew that the intended
> purpose of the Trust was to shield the assets transferred into the Trust from Kodsi's
> creditors.

> 31.  On information and belief, each of the trustees acquiesced in the Trust's
> fraudulent purpose and administered the Trust with that purpose in mind.

Complaint, ¶¶ 26, 29-31.  Together with one conclusory allegation – that "Greco did not take

the transfers from the predecessor trustees in good faith" – these paragraphs contain all of the

allegations against Mr. Greco.  *Id.,* ¶ 51.

The allegations against Georgette Kodsi and Rachel Foster are even more vague.  After

identifying each of them, and Foster's children, as beneficiaries of the Trust, *see* Complaint, ¶¶

15-17, Sullivan makes no allegation of wrongdoing against any of them, except in paragraph

33:  "On information and belief, each of the Trust's beneficiaries have received or are entitled

to receive the benefits of the assets fraudulently conveyed into the Trust."

These allegations are plainly insufficient to support a claim against Mr. Greco, Ms.

Kodsi or Ms. Foster.  "Where a case involves multiple defendants, F.R.C.P. 9(b) requires that

the complaint allege facts specifying each defendant's contribution to the fraud, identifying

which defendant is responsible for which act."  *Securities Investor Protection Corp. v. Stratton

Oakmont, Inc.*, 234 B.R. 293, 310 (S.D.N.Y. Bankr. 1999).  The complaint here does not even

attempt to meet this standard, since it makes no specific allegations of wrongdoing against Mr.

Greco, Ms. Kodsi or Ms. Foster.  "Judgments against transferees are generally limited to

situations, such as those present in this case, where the transferees were aware of the

transferor's fraudulent scheme and where the assets were disposed of or depreciated." *Hassett*,

10 F.Supp.2d at 192 (citing *Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 508 N.Y.S.2d

17 (2nd Dept. 1986)).  The complaint fails to allege with specificity that these defendants knew

of any fraudulent scheme to convey property to the Trust, or from the Trust to the

beneficiaries.  On the contrary, since the Trust allegedly disposed of the ownership interest in

Connector Service Corporation to a third-party – and not to any of the defendants – there is no

basis for a claim against Ms. Kodsi or Ms. Foster.

> 2.  The Complaint Fails to State the Factual Basis for Plaintiff's Beliefs

The complaint also falls short of Rule 9(b) because it provides no factual support for the

conclusory allegations of fraud.  "The allegations must be accompanied by a statement of the facts

upon which the belief is founded." *Luce*, 802 F.2d at 54 n. 1 (citing *Segal v. Gordon,* 467 F.2d 602,

608 (2d Cir. 1972)).  This flaw is most obvious with respect to the claims against Mr. Greco, Ms.

Kodsi and Ms. Foster, but it is also true with respect to the claims against Mr. Kodsi.

Like any family trust, the Kodsi family trust was created by a transfer of assets from the

principal breadwinner – in this case, Alain Kodsi – to the trust, for the benefit of his family, without

explicit consideration. *See* Complaint, ¶¶ 10-19, 28.  Quoting the New York statute, Sullivan alleges

that Kodsi acted "with the actual intent to hinder, delay or defraud Kodsi's creditors including

Sullivan." *Id.* ¶ 46.  The only basis for this statement is a partial sentence from Mr. Kodsi's

deposition in the Illinois action.  The complaint alleges that he "admitted" that he transferred assets

to the trust to insulate his investments from his business activities. *Id.*

In fact, Mr. Kodsi testified that he transferred assets into the Trust for a variety of reasons, on the advice of counsel. *See* Willens Dec., Ex. C at 376-77. Among other things, "I formed [the Trust] in order to provide security for my mother and my wife and to insulate investments from any business activities that I was involved with." *Id.*, 376. When asked to specify these business activities, Mr. Kodsi testified that Connector Service Corporation had "potential environmental liabilities," and the transfer of CSC stock to the Trust was timed to avoid imputing those liabilities to the Trust. *Id.*, 378. Again, Mr. Kodsi testified that the timing of the transfer was decided by his attorneys. *Id.*, 379.

In short, the only support for Sullivan's specious allegation of fraud in this action is an incomplete quotation from a deposition of Mr. Kodsi. That testimony clearly demonstrates a lack of fraudulent intent, and specifically refutes the allegation that Mr. Kodsi created the Trust to defraud Sullivan. The complaint falsely alleges that "Kodsi has admitted under oath that the purpose of the Trust is to shield Kodsi's assets from his business activities *and creditors*." Complaint, ¶¶ 14, 19 (emphasis added). On the contrary, Mr. Kodsi testified that the purpose of the Trust had nothing to do with any creditors, but merely served to protect personal assets that might otherwise be threatened by his investment in Connector Service Corporation.

In the absence of any factual support, the conclusory allegations of fraud in the complaint do not satisfy Rule 9(b). *See Rombach v. Chang,* 355 F.3d 164, 176 (2d Cir. 2004) (rejecting pleading that couples a factual statement with conclusory allegation of fraudulent intent under Rule 9(b)).

3.    Other than the Connector Service Transfer, the Complaint
       Does Not Sufficiently Identify Any Fraudulent Transfer

The most important purpose of Rule 9(b) is to put the defendants on notice of the allegedly fraudulent conduct by specifying the date of the conduct and the persons involved. *SIPC v. Stratton Oakmont*, 234 B.R. at 317 (complaint must put defendant "on notice of the time, place and manner

of the manner which constitute his alleged intent to defraud . . . creditors"). Sullivan's complaint

falls short of this requirement because, although he repeatedly refers to multiple "transfers" from Mr.

Kodsi to the Trust, he identifies only one transfer specifically: the Connector Service Transfer in

June 2000. Complaint, ¶¶ 18-19.[6] As a result, it is impossible for defendants to identify the

transfers that Sullivan considers to be fraudulent. It is also impossible to determine whether many of

the allegations in the complaint are true or false. *See* Complaint, ¶¶ 40-46 (referring to unspecified

"transfers" in each allegation). This lack of specificity is particularly important because many of the

transfers likely occurred shortly after the Trust was created, before May 26, 1998, and therefore fall

outside the six-year limitations period.

Under these circumstances, Rule 9(b) requires that the complaint be dismissed. *See In re

Crazy Eddie Securities Litigation,* 802 F. Supp. 804, 816-17 (E.D.N.Y. 1992) ("[a]bsent specific

allegations supporting an actual intent to defraud creditors, the claim is insufficient" under Rule 9(b),

including time, place and details of alleged fraudulent acts).

4. <u>The Alleged Facts Do Not Give Rise to a Strong Inference of Fraudulent Intent</u>

Finally, Sullivan must allege circumstances that strongly support an inference of fraud. In

New York, however, the creation of a family trust is not evidence of fraudulent intent.

For example, in *Case v. Fargnoli*, 182 Misc.2d 996, 702 N.Y.S.2d 764 (N.Y. Sup. 1999), the

defendant created an irrevocable trust for the benefit of himself and his sons. The court dismissed a

fraudulent conveyance claim under section 276 on defendants' motion for summary judgment.

"[The] creation of the trust cannot be considered fraudulent under the Debtor and Creditor Law

unless the facts and circumstances which invoke the statute have been established." 702 N.Y.S.2d at

---

[6]     The complaint mentions another transfer, of "a membership interest in the company called
MG Capital, LLC," but there is no indication of when it occurred or the value of the interest. *Id., ¶*
39(C).

768.  "Concededly, the trust was designed to shelter assets from possible future estate tax liability and claims by medical service providers."  *Id.*  However, plaintiff failed to demonstrate any "secrecy or duplicity" in the creation of the trust, or that defendant knew at the time he created the trust that he would be faced with debts that he could not pay.  *Id.*  "We conclude, as a matter of law, that plaintiff has failed to show, by the required clear and convincing evidence, that the 1987 transfer [to the trust] was intentionally fraudulent."  *Id.  See also Grace Plaza of Great Neck, Inc. v. Heitzler*, 2 A.D.3d 780, 780, 770 N.Y.S.2d 421, 423 (2nd Dept. 2003) (transfers to family members do not support fraudulent conveyance claim under section 276); *United States v. McCombs,* 928 F. Supp. 261, 274-75 (W.D.N.Y. 1995) (mere fact parties to transfer are related or under common control does not establish lack of good faith).

In a thorough discussion of this issue in *Lippe v. Bairnco Corp.*, 249 F. Supp.2d 357 (S.D.N.Y. 2003), *aff'd*, 2004 WL 1109846 (2d Cir. 2004), Judge Chin refused to find a fraudulent conveyance between two affiliated companies.

> Because fraudulent intent is rarely susceptible to direct proof, plaintiffs often seek to prove intent to defraud circumstantially by proof of certain "objective facts" – "badges of fraud" – that give rise to an inference of intent to defraud.  Among these "badges" are: 1) gross inadequacy of consideration; 2) a close relationship between transferor and transferee; 3) the transferor's insolvency as a result of the conveyance; 4) a questionable transfer not in the ordinary course of business; 5) secrecy in the transfer; and 6) retention of control of the property by the transferor after the conveyance.  Of course, the flip side of these badges of fraud is that their absence – or evidence that fair consideration was paid, the parties dealt at arm's-length, the transferor was solvent, the transfer was not questionable or suspicious, the transfer was made openly, or the transferor did not retain control – would constitute evidence that there was no intent to defraud.

249 F. Supp.2d at 374-75 (citations and internal quotations omitted).  The court held that, because the parties conducted their transaction openly, sought the advice of counsel, and did not create any sham entities or fictitious entities to hide assets, plaintiff could not establish actual intent to defraud:

No reasonable jury could find that there was anything suspicious or questionable about the transfers here. Although the transfers were not in the ordinary course of business, there were legitimate business reasons for them. *Even assuming management's concern over the asbestos cases was a motivating factor, there was nothing inappropriate about a company's management looking for lawful ways to reduce the adverse impact of asbestos litigation.*

*Id.,* 382-83 (emphasis added).

The same reasoning applies here. Although any family trust will have some of the "badges of fraud," these are weak indicators of wrongdoing when the family is engaged in a legally sanctioned, widely accepted method of asset management. Rather than labeling all family trusts as presumptively fraudulent, it makes more sense to distinguish among specific types of trusts.

There is substantial case law discussing the characteristics and purpose of "asset protection trusts." *See, e.g., S.E.C. v. Brennan*, 230 F.3d 65, 68 (2d Cir. 2000); *FTC v. Affordable Media, L.L.C.,* 179 F.3d 1228, 1239-44 (9th Cir. 1999) (discussing the common purposes and operations of offshore asset protection trusts); *Breitenstine v. Breitenstine*, 62 P.2d 587 (Wyo. 2003) (finding fraudulent conveyance where asset protection trust holds assets for the benefit of the settlor of the trust, and not for the nominal beneficiaries); *Nastro v. D'Onofrio,* 263 F. Supp.2d 446 (D. Conn. 2003) (same). In general, these trusts are located in an offshore jurisdiction, such as Gibraltar or the Cayman Islands, that offers extraordinary protection to bank accounts and other assets.[7] These jurisdictions have very short statutes of limitations, so that the time for creditors to challenge the trust as a fraudulent conveyance is less than the six years provided in New York. Also, asset

---

[7]    Similar asset protection is now available in the U.S. as well. "In order to counter the success offshore jurisdictions have enjoyed in attracting clients seeking asset protection coupled with wealth management, Alaska and Delaware by competitive necessity have included in their respective statutes provisions granting to trust settlors a degree of explicit asset protection benefits previously unavailable in any United States jurisdiction." *See* J. Eason, "Home From The Islands: Domestic Asset Protection Trust Alternatives Impact Traditional Estate And Gift Tax Planning Considerations," 52 Fla. L. Rev. 41, 43 (1999).

protection trusts often lapse after a period of years, so that the principal reverts to the settlor rather than passing to the beneficiaries of the trust.[8]

The Kodsi family trust has none of the attributes of an asset protection trust. It is located in New York, not in an offshore jurisdiction or in one of the states that offers more protection to trusts. Although the trust agreement allows the trustee to relocate the trust to a more favorable jurisdiction, he has not done so. *See* Willens Dec., Ex. D at 28-29. Further, the assets in the Kodsi family trust cannot revert to Mr. Kodsi, and he is not a beneficiary of the trust. *Id.*, 2. The transfer of assets is genuine, and permanent. *Id.,* 29 (declaring the trust to be "irrevocable").[9]

Indeed, the complaint undermines any allegation that the purpose of the Trust is to shield creditors. Paragraph 62 of the complaint says: "The trust agreement for the Trust maintains an intent to confer on third parties such as Sullivan the power to reach trust property and apply it to the satisfaction of their claims, including Sullivan's claims here, against the Trustees of the Trust." This allegation means that Sullivan *can* reach these assets if he has a claim against the trust. Moreover, the complaint alleges that the Connector Service Transfer in June 2000 "was part of the original purpose of the Trust" – which was created long before Sullivan had any claim against Mr. Kodsi. *See* Complaint, ¶ 19.

In short, the complaint fails to allege facts sufficient to support an inference of fraud. There is nothing fraudulent about creating a family trust, or transferring assets into the trust for the benefit of family members. The defendants could have taken advantage of "asset protection" laws to make

---

[8]      Judge Kaplan analyzed one such trust in *Interpool Ltd. v. Patterson*, 890 F. Supp 259 (S.D.N.Y. 1995).   In that case, the debtor was a trustee and a beneficiary, the trust was revocable by the debtor, and the trust contained a "protective provision" that specifically prevented creditors from reaching the debtor's interest in the trust. 890 F. Supp at 263.

[9]      Compare *Granwell v. Granwell*, 20 N.Y.2d 91, 228 N.E.2d 779, 281 N.Y.S.2d 783, 786 (1967),  where the Court of Appeals found that the trust did not constitute a genuine conveyance because the settlor "reserved an absolute power to revoke the trusts or to change the beneficiary."

life far more difficult for creditors, but they did not do so, because that was not the purpose of the Trust.  The complaint rests on the faulty inference that family trusts are inherently fraudulent, but that inference is not sufficient to meet the heightened pleading requirements of Rule 9(b).


## POINT II

### THE SECOND AND FOURTH CLAIMS UNDER DCL § 273 MUST BE DISMISSED

A.  The Complaint Fails to Allege Insolvency

Plaintiff also asserts claims under the constructive fraud provision of the New York Debtor and Creditor Law, section 273.  In the second and fourth claims of the complaint, Sullivan alleges that all of the defendants are liable under section 273 because the unspecified transfers were made without fair consideration and "at the time of those transfers Kodsi was or thereby became insolvent."  *See* Complaint, ¶¶ 56, 65.  This conclusory assertion is refuted by the specific allegations in the complaint.

"A fraudulent conveyance is a transfer made without fair consideration by a debtor when he or she is insolvent or which renders him or her insolvent (*see* Debtor and Creditor Law § 273) or by a defendant in an action for money damages who is unable to satisfy a judgment that the plaintiff finally obtains (*see* Debtor and Creditor Law § 273-a)."  *Palermo Mason Const., Inc. v. Aark Holding Corp.*, 300 A.D.2d 458, 752 N.Y.S.2d 99, 101 (2nd Dept. 2002).   A defendant can be held liable under section 273 only if the conveyance left him insolvent.  *SIPC v. Stratton Oakmont*, 234 B.R. at 319; *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Services Co.*, 910 F. Supp. 913, 936 (S.D.N.Y. 1995).  Where transfers are made without consideration, the burden is on the defendant to produce some evidence of solvency; the burden of persuasion then falls on the plaintiff.

*MFS/Sun Life*, 910 F. Supp. at 939.  *See In re Bergman*, 293 B.R. 580, 586 (W.D.N.Y. Bkrtcy. 2003) (presumption of insolvency rebutted in intra-family transfer).[10]

Here, the allegations in the complaint refute any possibility that Mr. Kodsi was insolvent immediately after the Connector Service Transfer in June 2000.  First, plaintiff alleges that Mr. Kodsi's net worth was $100,000 in January 2001, shortly after the Connector Service Transfer.  *See* Complaint, ¶ 38.  Second, plaintiff alleges that Mr. Kodsi was able to pay $1 million to the Securities and Exchange Commission in 2001.  Indeed, the complaint alleges that Mr. Kodsi retains access to all of the assets of the Trust, and those assets are sufficient to pay his living expenses and the cost of his litigation with Sullivan.  *Id., ¶* 39.[11]

An individual with a net worth of $100,000 is not insolvent, particularly if he is able to satisfy a substantial judgment and otherwise pay his expenses when they are due.  *See Henry v. Field*, 205 F. Supp. 197, 201 (S.D.N.Y. 1962) (Weinfeld, J.) (defendant not insolvent after transfer where substantial assets remain).  The complaint does not allege that Mr. Kodsi has failed to pay any of his current obligations.  Instead, Sullivan alleges insolvency by counting his contingent $13 million claim as if Mr. Kodsi already owed him the full amount of that claim.  *See, e.g.*, Complaint, ¶ 42 ("The damages Sullivan claims in the Illinois Case far exceed Kodsi's purported net worth"; ¶ 45 (Kodsi is "unable to satisfy his debts including his debt to Sullivan"); ¶ 47 ("Because the damages

---

[10]     New York law defines insolvency as follows:  "A person is insolvent when the present fair saleable value of his assets is less than the amount that will be required to pay *his probable liability* on his existing debts as they become absolute and matured."  DCL § 271 (emphasis added).  A debt, for purposes of this section, "includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent."  DCL § 270.  *See generally In re Manshul Const. Corp.*, 99 Civ. 2825(JGK). 2000 WL 1228866, *53 (S.D.N.Y. 2000); *Allen Morris Commercial Real Estate Services Co. v. Numistatic Collectors Guild, Inc*., No. 90 Civ. 264(SWK), 1993 WL 183771 (S.D.N.Y. 1993).  Sullivan's claim in the Illinois action is a debt, but it is too speculative to count as a "probable liability."

[11]     Many of these allegations are false or inaccurate, but they are assumed to be true for purposes of this motion.

claimed by Sullivan in the Illinois Case far exceed Kodsi's purported net worth, Kodsi believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due").

Although Sullivan's claim is a "debt" under section 270, it cannot be counted against Mr. Kodsi's "probable liability" under section 271 because the value of the pre-judgment claim now pending in Illinois is "entirely speculative." *Shelly v. Doe*, 249 A.D.2d 756, 671 N.Y.S.2d 803, 806 (3rd Dept. 1998). In *Shelly*, plaintiff transferred valuable firearms to a family member when Doe already had an unmatured, contingent claim against him. Although that claim eventually led to a substantial judgment in Doe's favor, the Appellate Division held:

> Respondent contends that [the debtor's estimated net worth] was arrived at without considering Shelly's probable liability on his existing debt to her as required by Debtor and Creditor Law § 271(1). *In our view the amount of his probable debt to respondent should not be considered as it was entirely speculative in 1993.* Therefore, we find that respondent did not establish that Shelly was rendered insolvent by the transfer of the firearms, thereby precluding respondent's utilization of Debtor and Creditor Law § 273.

*Shelly,* 671 N.Y.S.2d at 806 (emphasis added). *See also Pfohl Brothers Landfill Site Steering Committee v. Allied Waste Systems, Inc.*, 255 F. Supp.2d 134, 173 (W.D.N.Y. 2003) (discussing *Shelly,* court notes that contingent claim is not considered in evaluating solvency until creditor obtains judgment). As in *Shelly,* the complaint here alleges that Mr. Kodsi retained substantial assets after the Connector Service Transfer. Accordingly, there is no basis for the assertion that he was rendered insolvent by that transfer.

The flaw in Sullivan's claim is apparent when the requirements of section 273 are compared to those of section 273-a, the statute that protects judgment creditors. Under section 273-a, a transfer is fraudulent if (i) it is made while the debtor is a defendant in an action for money damages, (ii) there is no fair consideration for the transfer, and (iii) "*after final judgment for the plaintiff, the defendant fails to satisfy the judgment*." DCL § 273-a (emphasis added). The statute substitutes the

non-payment of a final judgment for the requirement of insolvency in section 273. In other words, the holder of a final judgment need not prove that the debtor is otherwise insolvent if he can show that a valid judgment against the debtor has not been paid.

By alleging that Mr. Kodsi is insolvent solely because he cannot pay a contingent $13 million claim, Sullivan is seeking the benefits of section 273-a before he gets a judgment. This strategy is particularly apparent because the complaint demands immediate payment of the full amount of that claim – a bold example of putting the cart before the horse. *See* Complaint at 10 (demanding "entry of a money judgment in favor of plaintiff . . . in an amount sufficient to satisfy Plaintiff's claim against Defendant Alain Kodsi."

This demand for damages put this Court in the awkward position of determining the merits of a claim that has already been filed and substantially litigated in Chicago. Moreover, it contravenes the rule that a judgment creditor's right to satisfy a judgment cannot be enhanced by virtue of a fraudulent transfer. *See, e.g., Mfrs. & Traders Trust Co. v. Lauer's Furniture Acquisition, Inc.,* 226 A.D.2d 1056, 641 N.Y.S.2d 947, 948 (4th Dept. 1996) ("As a general rule, the creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance"); *Marine Midland,* 508 N.Y.S.2d at 24 ("[T]he defrauded creditor is not entitled to an enhancement of position beyond what it was before the fraud"); *Hassett*, 10 F. Supp.2d at 193 (same). By demanding full payment of his $13 million claim before he obtains a judgment, Sullivan is improperly using the New York fraudulent conveyance laws to enhance his position as a creditor of Mr. Kodsi.

Because the complaint alleges that Mr. Kodsi was rendered insolvent in 2000 solely on the basis that he could not pay the contingent $13 million claim now pending in the Illinois case, Sullivan has failed to state a claim under section 273. Because he is not a judgment creditor, he also

has no claim under section 273-a.  That statute requires him to wait until he has a judgment in the Illinois action before proceeding under the fraudulent conveyance laws in New York.  Accordingly, the second and fourth claims of the complaint should be dismissed.

B.  <u>The Complaint Fails to State a Claim Against Ms. Kodsi or Ms. Foster</u>

As noted above, the complaint makes no substantial allegations against Georgette Kodsi and Rachel Foster.  The complaint simply identifies them, and Foster's children, as beneficiaries of the Trust, *see* Complaint, ¶¶ 15-17, and then alleges: "On information and belief, each of the Trust's beneficiaries have received or are entitled to receive the benefits of the assets fraudulently conveyed into the Trust."  *See* Complaint, ¶ 33.[12]

This conclusory allegation is not sufficient to state a claim under section 273.  "Under long-standing New York law, a creditor has no cause of action against a party who merely assists a debtor in transferring assets where, as here, there was neither a lien on those assets nor a judgment on the debt."  *Federal Deposit Ins. Corp. v. Porco*, 75 N.Y.2d 840, 552 N.Y.S.2d 910, 552 N.E.2d 158 (1990).  Instead, a defendant who did not transfer the assets "is liable to plaintiff only 'to the extent of the value of the money or property he or she wrongfully received.'"  *Mfrs. & Traders Trust Co.,* 641 N.Y.S.2d at 948 (quoting *Farm Stores v. School Feeding Corp.,* 477 N.Y.S.2d 374, 102 A.D.2d 249 (2nd Dept. 1984)).

Here, the complaint does not allege that Ms. Kodsi or Ms. Foster "wrongfully received" anything.  On the contrary, Sullivan asserts that the "ownership interest" in Connector Service Corporation was received *by the Trust* in June 2000 and then sold to a third-party in February 2001.  *See* Complaint, ¶¶ 19, 22.  There is no allegation that Ms. Kodsi or Ms. Foster participated in either

---

[12]     The Trust Agreement provides that the beneficiaries have no power to alienate or encumber the assets of the Trust.  Willens Dec., Ex. D at 17.  Ms. Kodsi and Ms. Foster cannot control the transfer of those assets.

of these transactions, or that the proceeds of the sale to the third-party have been distributed to any beneficiary. In short, there is no allegation that these defendants have acted improperly in any respect. The Fourth Claim of the complaint should therefore be dismissed.

POINT III

PLAINTIFF'S CLAIMS FOR DAMAGES SHOULD BE STRICKEN

The complaint ends with a laundry list of demands that far exceeds what New York law allows. In particular, plaintiff has no claim for attachment or money damages in the absence of a judgment against Mr. Kodsi, and he has no claim for punitive damages under any circumstances.

A.  The Rights of a Creditor With No Mature Claim Are Limited By Section 279

The Debtor and Creditor Law spells out the relief available to "a creditor whose claim has not matured" in section 279. By contrast, the rights of "creditors whose claims have matured" are identified in section 278. The difference between them, of course, is that the court cannot actually transfer money or property to a creditor with no mature claim, but can only protect those assets for the creditor in the event that his claim matures. In particular, section 278 includes the right to "attach or levy execution upon the property conveyed," but section 279 includes no such relief. *Compare* DCL §§ 278(1)(b) *with* 279(c). *See generally MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Services Co.*, No. 91 Civ. 3451 (SWK), 1994 WL 722675, *5 (S.D.N.Y. 1994) ("[T]he remedies embodied in the statute are constructed such that the court may re-establish the *status quo ante.*"); *Ostashko v. Ostashko*, NO. 00-CV-7162 (ARR), 2002 WL 32068357 (E.D.N.Y. 2002), *aff'd sub. nom, Ostashko v. Zuritta-Teks*, Ltd., 2003 WL 22477929 (2nd Cir. 2003).

Disregarding these statutes, Sullivan seeks "attachment and levy against the assets held in trust in favor of and for the benefit of the Plaintiff." *See* Complaint at 10-11. Moreover, he seeks "entry of a money judgment" *against each of the defendants* for the full amount of his claim in the

21

Illinois action.  *Id.*  As explained above, this demand is wildly premature, since there is no judgment in the Illinois action, and this Court has no way to determine the value of Sullivan's claim without interfering with the jurisdiction of the Illinois court.  The claims for attachment, levy and money damages should therefore be stricken from the complaint.  *See Hassett*, 10 F. Supp.2d at 193 ("creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance; the limited remedies explicitly permitted under the statute confirm this interpretation") (citing *FDIC v. Porco*, 552 N.Y.S.2d at 911; *Marine Midland v. Murkoff*, 508 N.Y.S.2d at 25); *Trafalgar Power, Inc. v. Aetna Life Ins. Co.*, 131 F. Supp.2d 341, 349 (N.D.N.Y. 2001) (no attachment available for creditor with unmatured claim).  Any other result would allow Sullivan to enhance his position against the defendants as a result of the allegedly fraudulent conveyances.

B.  Plaintiff Has No Claim for Punitive Damages

The complaint seeks punitive damages against Mr. Kodsi and Mr. Greco "based [on] the willful, wanton, malicious and reckless disregard of the rights of Sullivan and other creditors."  *See* Complaint at 12.  The complaint provides no factual support for this overblown rhetoric.  In any event, "the New York Court of Appeals has held that fraudulent conveyances are not the type of behavior for which punitive damages are available."  *Citibank, N.A. v. Benedict*, No. 97 Civ. 9541 (AGS), 2000 WL 322785, *16 (S.D.N.Y. 2000) (citing *James v. Powell,* 19 N.Y.2d 249, 279 N.Y.S.d 10 (1967)).  "The act of removing property from the reach of a creditor is not misconduct so gross and wanton as to justify such an award" of punitive damages.  *Marine Midland v. Murkoff*, 508 N.Y.S.2d at 24.  Accordingly, the claim for punitive damages should be dismissed.

<u>CONCLUSION</u>

For all of these reasons, the complaint should be dismissed.

Dated:  New York, New York
         July 23, 2004

JONATHAN A. WILLENS LLC

By: _____
Jonathan A. Willens, Esq. (JW-9180)
217 Broadway, Suite 707
New York, New York 10007
Tel. (212) 619-3749
Fax (800) 879-7938
e-mail jawillens@briefworks.com