UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRIAN T. SULLIVAN,                           :
                                             :
                    Plaintiff,               :        04 CV 3994 (GEL) (JCF)
                                             :
        v.                                   :
                                             :
ALAIN KODSI; LOUIS GRECO, individually       :
and as successor trustee of the GAMCREFK     :
Trust; the GAMCREFK Trust; GEORGETTE         :
KODSI; and RACHEL FOSTER, individually       :
and as guardian of her children,             :
                                             :
                    Defendants.              :

---

**PLAINTIFF'S MEMORANDUM OF
LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

I. INTRODUCTION .............................................................................................................1

II. FACTS ........................................................................................................................2

III. ARGUMENT ..............................................................................................................4

      A.    Legal Standard .............................................................................................4

      B.    Sullivan's Claims Were Brought Within
           the Applicable Statute of Limitations ........................................................5

      C.    Counts I and III More than Adequately Plead
           Kodsi's Actual Intend to Defraud His Creditors ......................................6

      D.    Sullivan's Allegations Made on "Information
           and Belief" Do Not Defeat His Claims ...................................................11

      E.    Sullivan Has Sufficiently Identified Kodsi's Transfers to the Trust ......14

      F.    Kodsi's Transfer To The Trust Have All the Indices of Fraudulent Intent ...........15

      G.    Kodsi Was Insolvent ...............................................................................19

      H.    Sullivan's Claims for Damages Should Not Be Stricken ........................23

      I.    Leave to Amend ......................................................................................23

IV. CONCLUSION ...........................................................................................................24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRIAN T. SULLIVAN,                             :
                                               :
        Plaintiff,                        :        04 CV 3994 (GEL) (JCF)
                                               :
     v.                                       :
                                               :
ALAIN KODSI; LOUIS GRECO, individually  :
and as successor trustee of the GAMCREFK     :
Trust; the GAMCREFK Trust; GEORGETTE         :
KODSI; and RACHEL FOSTER, individually       :
and as guardian of her children,             :
                                               :
        Defendants.                      :

---

### PLAINTIFF'S MEMORANDUM OF
### LAW IN OPPOSITION TO DEFENDANTS'
### MOTION TO DISMISS THE COMPLAINT

     Plaintiff Brian T. Sullivan respectfully submits this memorandum of law in opposition to

Defendants' motion to dismiss the complaint.

### I. INTRODUCTION

     Faced with a suit by his former partner, Alain Kodsi ("Kodsi") created the GAMCREFK

Trust (the "Trust") to "insulate [his] investments from his business activities" and conveyed all

but one of his assets to his Trust.  Later, following acts of insider trading and a likely or ongoing

investigation by the Securities and Exchange Commission which resulted in a suit by the SEC

and faced with a multi-million dollar suit by Brian Sullivan ("Sullivan"), Kodsi conveyed the last

of his assets to his Trust.  Kodsi received no consideration for the conveyances and was rendered

insolvent as a result.  Kodsi has also admitted that his Trust and the conveyance in the face of

Sullivan's suit was to "insulate [his] investments from his business activities."  Kodsi's transfers

to his Trust would appear to be complete (Kodsi appears to be neither a beneficiary nor trustee of

his Trust and the Trust agreement states the Trust is irrevocable). Despite the appearance of a complete transfer, Kodsi's life has proceeded as though no transfers occurred. For example: Kodsi retained and retains constructive control over the assets; Kodsi managed and manages the Trust assets as though they were his own; Kodsi's living expenses and litigation costs are paid from the Trust's assets. These facts describe quintessential fraudulent conveyances.

Defendants' Motion is to dismiss for failure to state a claim. Accordingly, both Plaintiff and Defendants are limited to the four corners of the Complaint and any documents attached to or referred to in the Complaint. This is why Plaintiff has moved to strike Paragraphs 4 through 12 of the Declaration of Jonathan Willens. In addition, much of Defendants' arguments simply dispute the facts that Sullivan has properly plead to support his claims. Defendants' attempts to introduce facts beyond those properly considered by this Court are improper at this juncture in the proceedings. Based on the allegations of Sullivan's Complaint and for the reasons set forth herein, Defendants' Motion should be denied.

## II. FACTS

On or about December 23, 1997, Defendant Kodsi was sued by his former partner, Jeffrey Briggs, in California. (Complaint, ¶ 9) On December 31, 1997, Kodsi formed the Kodsi Family Trust. In or about July 1999, Kodsi changed the name of his trust from the "Kodsi Family Trust" to the "GAMCREFK Trust". (Complaint, ¶ 10) Kodsi is the settlor of the Trust. (Complaint, ¶ 12) Louis Greco ("Greco") is the sole trustee of Kodsi's Trust. (Complaint, ¶ 4) The beneficiaries of the Trust are Kodsi's family, i.e. his wife, his mother, and his children. (Complaint, ¶ 15-17)

Although Kodsi has obstructed Sullivan's efforts to learn the details of the Trust and his conveyances to the Trust, sometime between its formation and June of 2000, Kodsi conveyed all

2

or substantially all of his assets into the Trust. (Complaint, ¶ 18; Declaration of Jonathan

Willens, Ex. C., p. 377, lines 1-12) At least one of the transfers, the transfer of Kodsi's 50%

shareholder ownership in Connector Service Corporation ("CSC" and the "CSC Conveyance"

respectively), occurred four months after Sullivan filed suit against Kodsi among others in the

Circuit Court of Cook County Illinois, Cause No. 00 L 1973 (the "Illinois Case"). (Complaint ¶

34) In the Illinois Case, Sullivan seeks damages against Kodsi individually of at least $13

million. (Complaint, ¶ 36) The CSC Conveyance also occurred following Kodsi's acts of

insider trading and following a likely or ongoing investigation by the Securities and Exchange

Commission which resulted in a suit by the SEC and a judgment against Kodsi of approximately

$1.6 million. (Complaint, ¶ 39(A); Declaration of David H. Latham, Exs. A and B)

      Kodsi made the conveyances into his Trust and to its trustees with the actual intent to

hinder, delay or defraud Kodsi's creditors including Sullivan. (Complaint, ¶ 46) During his

deposition, Kodsi testified regarding the purpose of his Trust:

     Q.     In your mind, why did you form [the Trust]?

     A.     I formed it in order to provide security for my mother and my wife
            and to insulate investments from any business activities that I was
            involved with.

     Q.     What business activities?

     A.     Anything that I would be doing.

(Declaration of Jonathan Willens, Ex. C., p. 376, lines 7-15)[1]

---

[1]     Mr. Willens, while attempting to interpret Kodsi's testimony, argues that: "When asked to specify
these business activities [Mr. Kodsi was trying to insulate his assets from], Mr. Kodsi testified that CSC
had 'potential environmental liabilities,' and the transfer of CSC stock to the trust was timed to avoid
imputing those liabilities to the Trust." (Mem. at 11) Not true. When Kodsi was asked to specify the
business activities he was trying to insulate his assets from, Kodsi testified: "Anything that I would be
doing." (Declaration of Jonathan Willens, Ex. C., p. 376, lines 7-15) (emphasis supplied). Mr. Willens'

In addition, Kodsi did not receive any consideration nor did he receive the reasonably equivalent value in exchange for the conveyances. (Complaint, ¶¶ 28 and 44) Mr. Kodsi has admitted he received nothing for the conveyance of CSC to the Trust. (Declaration of Jonathan Willens, Ex. C., p. 378, lines 19-23) Kodsi was insolvent or became insolvent at the time the conveyances including the CSC Conveyance in June 2000. (Complaint, ¶¶ 19 and 45) At all relevant times, Kodsi retained and currently retains control of, and the benefit of, the assets held in the Trust. (Complaint, ¶ 39)

## III. ARGUMENT

### A.    Legal Standard

When considering a Rule 12(b)(6) motion to dismiss, the court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir.1980); see Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 124 (2d Cir.1991). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974). A Rule 12(b)(6) motion should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984). On a motion to dismiss, a district court must accept plaintiff's well-pleaded factual allegations as true (Papasan v. Allain, 478 U.S. 265, 283, 106 S.Ct. 2932, 2943 (1986)) and the allegations must be "construed favorably to the plaintiff." LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir.1991); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir.1991), cert. den., 503 U.S. 960, 112 S. Ct. 1561 (1992).

---

attempt to limit "business activities" to CSC is not supported by Mr. Kodsi's testimony.

The court must limit itself to facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference. See, Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 138 (2d Cir.1999); see Cortec Indus., 949 F.2d at 47; Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir.1991). However, the court may also consider documents which are "integral" to plaintiff's claims and were relied upon in drafting the complaint. See Cortec Indus., 949 F.2d at 44.

**B.    Sullivan's Claims Were Brought Within**
**the Applicable Statute of Limitation**

Defendants argue that *some* of the fraudulent conveyances are barred by the six year statute of limitations. (Mem. at 8)  However, Defendants concede that at least one conveyance – the CSC Conveyance – occurred within the statute of limitations. (Mem. at 7-8)  Accordingly, as a matter of law, at least the CSC Conveyance is within the statute of limitations. This is sufficient to sustain Sullivan's complaint at the pleadings stage.

Defendants also concede that other conveyances may be within the statute of limitations based on the "discovery rule." (Mem. at 7-8)  The statute of limitations is a defense which Defendants have the burden of proving. Katt v. City of New York, 151 F. Supp. 2d 313 (S.D.N.Y. 2001), aff'd, 60 Fed. Appx. 357, 2003 WL 1785897 (2nd Cir. 2003).  Sullivan has been attempting to discover the specifics of Kodsi's conveyances to his Trust for almost two years now, but Kodsi has obstructed Sullivan's efforts. (Complaint, ¶ 18)  Thus, it remains a question of fact when Sullivan knew or should have known of the individual conveyances. Thompson v. Metropolitan Life Ins. Co., 149 F. Supp. 2d 38, 50 n.9 (S.D.N.Y. 2001).

Finally, the filing date of Sullivan's complaint here does not tell the whole story. Sullivan first filed his fraudulent conveyance claims against Kodsi in January 2002. MG Capital v.

Sullivan, 2002 WL 1160943 * 1 (N.D. Ill. 2002). These claims were dismissed for lack of subject matter jurisdiction. Sullivan's fraudulent conveyance claims were then promptly re-filed in the Illinois Case.[2] (Declaration of Jonathan Willens, Ex. B, at 24-28) Thus, Sullivan's fraudulent conveyance claims against Kodsi have been on file with only a brief pause, since January 2002. Finally, Greco, the current trustee, was not named trustee until May 2004 (Complaint, ¶ 26) making it impossible to bring suit against Greco any earlier than Sullivan did.

Because Sullivan has alleged at least one conveyance within the statute of limitations and it is a question of uncertain fact when Sullivan should have discovered Kodsi's fraud, Defendants' request that this Court dismiss Sullivan's complaint based on the statute of limitations should be denied.

C.    **Counts I and III More than Adequately Plead Kodsi's Actual Intend to Defraud His Creditors**

Sullivan's Counts I and III allege Kodsi's actual intent to defraud his creditors.[3] Defendants argue that Counts I and III are not plead with sufficient particularity under Rule 9 of the Federal Rules of Civil Procedure. (Mem. at 8) Defendants are wrong. The Federal pleading requirements under Rule 9 for a fraudulent conveyance claim are set forth in Form 13 of the Appendix of Forms of the Federal Rules of Civil Procedure. Rule 84 of the Federal Rules of Civil Procedure specifically states that the forms contained in the Appendix of Forms are sufficient. Fed. R. Civ. P. 84. Rule 84 states in full:

---

[2]    MG Capital v. Sullivan and the Illinois Case were related to each other in that they both arose out of Sullivan's business relationship with Kodsi. MG Capital's claims against Sullivan started out in the Illinois Case. They were promptly dismissed only to be reincarnated in 2001 with the filing of MG Capital v. Sullivan . In late 2002, Kodsi caused MG Capital to voluntarily dismiss MG Capital v. Sullivan so that he could re-file MG Capital's claims against Sullivan in the Illinois Case for his own personal benefit in defending Sullivan's claims against him. (Complaint, ¶ 35(d))

[3]    Counts II and IV plead constructive fraud which does not require pleading with particularity under

The forms contained in the Appendix are sufficient under the rules and are intended to indicate the simplicity and brevity of statements which the rules contemplate.

Fed. R. Civ. P. 84. Form 13 requires four allegations. These four allegations are:

### 1) Allegation of jurisdiction. (Form 13, ¶ 1)

Defendants have not challenged Sullivan's allegations of jurisdiction but the allegations are set forth in ¶¶ 1 through 8 of the Complaint.

**2) Defendant C.D. on or about ____ executed and delivered to plaintiff a promissory note [in the following words and figures: (here set out the note verbatim) ]; [a copy of which is hereto annexed as Exhibit A]; [whereby Defendant C.D. promised to pay plaintiff or order on ____ the sum of five thousand dollars with interest thereon at the rate of ___ percent. per annum].**

**3) Defendant C.D. owes to plaintiff the amount of said note and interest. (Form 13, ¶¶ 2 and 3)**

These paragraphs require a plaintiff to set forth its status as a creditor. A person with a claim, even if that claim is not matured, is a creditor. DCL § 270. Even Form 13 does not require that the creditor be a judgment creditor. In Paragraph 34 through 37, Sullivan alleges in detail his status as a creditor based on his pending claims in Illinois.

**4) Defendant C.D. on or about ___ conveyed all his property, real and personal [or specify and describe] to defendant E.F. for the purpose of defrauding plaintiff and hindering and delaying the collection of the indebtedness evidenced by the note above referred to. (Form 13, ¶ 4)**

In Paragraphs 18, 19, and 43, Sullivan alleges that Kodsi conveyed all of his property to his Trust between January 1998 and June 2000. Sullivan specifically alleges that Kodsi conveyed his interest in CSC to his Trust in June 2000. Sullivan further alleges that "Kodsi has obstructed Sullivan's efforts to learn the details of the Trust and his transfers to the Trust. . . " (Complaint, ¶ 18) Sullivan also alleges that Kodsi made the conveyances, including the CSC

---

Rule 9. Spanierman Gallery v. Love, 320 F. Supp. 2d 108, 113 (S.D.N.Y. 2004)

Conveyance, into his Trust and to its trustees, with the actual intent to hinder, delay or defraud Kodsi's creditors including Sullivan. (Complaint, ¶ 46)

Sullivan has plead a fraudulent conveyance claim based on the pleading requirements set forth in Form 13. Rule 84 dictates that allegations meeting the requirements of Form 13 satisfy Federal pleading requirements. See Spanierman Gallery v. Love, 320 F. Supp. 2d 108, 113 (S.D.N.Y. 2004); In re Initial Public Offering Securities Litigation, 241 F. Supp. 2d 281, 327 (S.D.N.Y. 2003). However, Sullivan has plead more.

New York law recognizes two types of proof in a claim based on actual intent to defraud creditors. First, there may be direct proof of the debtor's intent. Sullivan has plead direct proof of Kodsi's intent. Sullivan alleges that: "Kodsi has admitted under oath that the purpose of the Trust is to shield Kodsi's assets from his business activities and creditors." (Complaint, ¶ 14) Sullivan further alleges that: "Kodsi has admitted in sworn testimony in April 2002, that he caused the transfers to the Trust, including but not limited to the Connector Service Transfer, in order to 'insulate [Kodsi's] investments from any business activities that [Kodsi] was involved with.'" (Complaint, ¶ 46) These admissions alone are sufficient to establish a claim for actual intent to defraud. See Wall Street Assoc. v. Brodsky, 257 A.D.2d 526, 529, 684 N.Y.S.2d 244,248 (1st Dept. 1999).

Second, because direct proof of a debtor's intent to defraud is seldom available (Marine Midland Bank v. Murkoff, 120 A.D.2d 122, 128, 508 N.Y.S.2d 17, 21-22 (2nd Dept. 1986)), actual intent may be proved through so-called "badges of fraud." Hassett v. Goetzman, 10 F. Supp. 2d 181, 188 (N.D.N.Y. 1998). Factors New York courts consider badges of fraud include: (1) a close relationship between the parties to the transaction; (2) a secret or hasty transfer not in the usual course of business; (3) inadequacy of consideration; (4) the transferor's knowledge of

the creditor's claim and his or her inability to pay it; (5) the use of dummies or fictitious parties; and (6) retention of control of the property by the transferor after the conveyance. See, MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co., 910 F. Supp. 913, 934 (S.D.N.Y. 1995).

Sullivan has alleged facts in support of each of these badges of fraud including:

- Kodsi created his Trust shortly after being sued by a former partner (factors 2 and 4). (Complaint, ¶¶ 9 and 10)

- The beneficiaries of Kodsi's Trust and of the conveyances are Kodsi's family members (factor 1). (Complaint, ¶¶ 15-17)

- Kodsi has tried to hide the conveyances (factor 2). (Complaint, ¶ 18)

- The original trustee was Antonio Gracias (Declaration of Jonathan Willens, Ex. D, at 1) who was a close business associate of Kodsi (factor 1). (Declaration of Jonathan Willens, Ex. B, at ¶ 13);

- Kodsi knew of Sullivan's claims at the time of at least some of the transfers and that, based on Kodsi's purported net worth, he would not be able to pay the judgment or the substantial expenses likely to be incurred to defend against Sullivan's claims (factor 4). (Complaint, ¶¶ 34-37, 40-45 and 47)

- Kodsi most likely knew of the SEC's investigation into Kodsi's 1998 insider trading activities and that he would be subject to damages, penalties, attorneys' fees, and related expenses exceeding his available assets. (Declaration of David H. Latham, Exs. A and B)

- Kodsi remained and remains in control of his assets even after the transfer (factor 6). (Complaint, ¶ 39)

9

- Kodsi received no consideration for the conveyances (factor 4). (Complaint, ¶ 44; Declaration of Jonathan Willens, Ex. C., p. 378, lines 19-23)

- And, to the extent that Kodsi's Trust is created by law simply to hold Kodsi's assets, it is fictitious (factor 5).

In addition, courts take a particularly dim view of conveyances which are not supported by consideration. United State v. Mazzeo, 306 F. Supp. 2d 294, 310 (E.D.N.Y. 2004) (a "lack of fair consideration gives rise to the presumption of fraud."), quoting, United States v. Carlin, 948 F. Supp. 271, 277-78 (S.D.N.Y. 1996). Courts especially scrutinize a transfer without consideration to a family member. Mazzeo, 306 F. Supp. 2d at 310, quoting, United States v. Alfano, 34 F. Supp. 2d 827, 845 (E.D.N.Y. 1999) ("Moreover, '[c]ourts view *intrafamily* transfers without any signs of tangible consideration as presumptively fraudulent.'") In this case, Kodsi received no consideration for the transfers. (Complaint, ¶ 44; Declaration of Jonathan Willens, Ex. C, at 378, lines 19-23) And, Kodsi's transfers were to a trust of which his mother, his wife, and his children were the beneficiaries. (Complaint, ¶ 39(E))

Finally, another indication that the transfers were fraudulent is the dramatic change in Kodsi's financial condition. In May 2000, Kodsi was a fifty percent shareholder in a corporation worth as much as $57 million. Seven months later, Kodsi *claimed* to be worth no more than $100,000 (most of which is likely exempt 401(k) deposits) while his wife and kids were the beneficial recipients of $20 million from the sale of CSC. This dramatic drop in Kodsi's financial status in the face of Sullivan's pending suit and the SEC's investigation is an indicator of Kodsi's fraudulent intent. Manshul Const. Corp. v. Geron, 2000 WL 1228866 * 50 (S.D.N.Y. 2000).

10

Sullivan's Complaint alleges Kodsi's admission regarding fraudulent intent, numerous, if not all, of the badges of fraud, and facts giving rise to a presumption of fraud. Sullivan's allegations are sufficient and Defendants' Motion to Dismiss should be denied.

**D.    Sullivan's Allegations Made on "Information and Belief" Do Not Defeat His Claims**

Although vague and ill-defined, Defendants generally appear to argue that Sullivan has not stated a claim against Greco, the current trustee of Kodsi's Trust. (Mem at 9-10) Because Defendants' argument lacks specificity, Sullivan responds generally with a statement of the law vis-a-vis trustees of trust in a fraudulent conveyance claim.

Greco is the fourth in a series of trustees of Kodsi's Trust.[4]  Greco is a mediate transferee of Kodsi's fraudulent conveyances. (Complaint, Counts I and II and ¶¶ 26 –31, 51-53); DCL §§ 278 and 279.  Thus, Greco is sued individually as a subsequent or mediate transferee of the fraudulent conveyances.  As a trustee of Kodsi's Trust, Greco is personally liable as a transferee and/or a subsequent transferee to the same extent he would be liable if he held the assets free of trust.  Kirchner v. Muller, 280 N.Y. 23, 28, 19 N.E.2d 665, 667 (1939); Restatement (Second) Trusts §§ 262 and 264 (1959).  Finally, Greco is also named as the current trustee along with Kodsi's Trust in a direct action against the Trust's assets because the Trust's trustees are entitled to exoneration out of the Trust assets and because the Trust Agreement confers the right on

---

[4]    Defendants complain about the expense and nuisance of the multiple suits Sullivan has filed against Kodsi (and others) concerning the Trust. (Mem. at 5)  All of the suits are the result of Kodsi's own actions.  Due to the short "half-life" of the trustees' tenures, Sullivan was forced to file multiple suits against several of the former and present trustees of the Trust, all of whom do not conveniently reside within the same jurisdiction.  Sullivan has tried to keep all the parties confined to the Illinois Case.  However, through the representation of Kodsi's attorneys and at Kodsi's expense, one of the Trust's former trustees, Neuberger Berman Trust Co. of Delaware, successfully escaped personal jurisdiction in the Illinois Case.  This necessitated the filing of a separate action against Neuberger in Delaware.  But the story does not end there.  Neuberger immediately resigned as trustee after it was dismissed from the Illinois Case.  Kodsi then appointed Greco, a New York resident, as trustee of the Trust.  Kodsi could have

11

Sullivan to proceed directly against the Trust based on claims he has against the trustees.

(Complaint, ¶¶ 54, 60, 62, and 63); Restatement (Second) Trusts §§ 268 and 270 (1959).

Defendants only specific argument is that Sullivan has not stated a claim against Greco

because three of Sullivan's allegations against Greco on made "information and belief." (Mem. at

9) These allegations allege in full:

> 29.    On information and belief, each of the trustees knew of Sullivan's dispute
> with and legal claims against Kodsi prior to becoming trustees.

> 30.    On information and belief, each of the trustees knew that the intended
> purpose of the Trust was to shield the assets transferred into the Trust from
> Kodsi's creditors.

> 31.    On information and belief, each of the trustees acquiesced in the Trust's
> fraudulent purpose and administered the Trust with that purpose in mind.

(Complaint, ¶ 29-31)

Defendants' argument is without merit for three reasons. First, the subject allegations

relate to the mental state of the transferee of a fraudulent conveyance, i.e. the Trust and the

trustees. The mental state of a transferee is irrelevant to a fraudulent conveyance claim based on

actual fraud. Crowthers McCall Pattern, Inc. v. Lewis, 129 B.R. 992, 999 (S.D.N.Y. 1991).

Accordingly, because Paragraphs 29 though 31 are irrelevant to an actual fraud claim, any

deficiencies in those allegations cannot defeat Sullivan's Counts I and III based on Kodsi's actual

intent to defraud his creditors. Accordingly, even if Paragraphs 29 through 31 were stricken,

Counts I and III would withstand Defendants' Motion to Dismiss.

Second, one of the elements of a **constructive fraud** claim is that the transfer was made

without fair consideration. DCL § 273. Fair consideration requires **both** adequate consideration

and good faith. DCL § 272. Sullivan has explicitly alleged that the transfers were made without

---

appointed a trustee residing in Illinois and avoided this lawsuit altogether, but he did not.

adequate consideration. (Complaint, ¶ 44)  Without fair consideration, the good faith of the transferee is irrelevant making Sullivan's allegations regarding the current trustee's good faith (Complaint, ¶¶ 29-31) irrelevant.  Because the allegations are irrelevant at this stage in the proceeding, any defect in the allegations cannot defeat Sullivan's Counts II and IV.

Third, to the extent that Sullivan's allegations regarding good faith are relevant, they relate only to Sullivan's constructive fraud claim which need not be plead with particularity. Spanierman Gallery v. Love, 320 F. Supp. 2d 108, 113 (S.D.N.Y. 2004).  Accordingly, Sullivan's allegations on "information and belief" are sufficient to support his constructive fraud claim.

In addition, the documents Defendants have submitted establish one of Sullivan's allegations, i.e. Greco knew about Sullivan's claims before becoming trustee. (Complaint, ¶ 29) Attached to the document attached to the Declaration of Jonathan Willens as Exhibit D is a document titled: "Receipt, Release, Indemnity and Refunding Agreement" (The "Indemnity Agreement").  The Indemnity Agreement was executed the same day that Greco became the successor trustee.  Paragraph 9(I) of the agreement refers to Sullivan's claims in Illinois. Accordingly, on the day that Greco became the successor trustee, he knew, as Sullivan alleges (Complaint, ¶ 29), that Sullivan had pending claims against Kodsi, including Sullivan's fraudulent conveyance claims.

Defendants also complain about Sullivan's allegations relating to the beneficiaries of the Trust. (Mem. at 9-10)  Sullivan's allegations are sufficient by themselves *and* are supported by the allegations of the Complaint.  The Trust was formed in 1997. (Complaint, ¶ 10)  The only beneficiaries of the Trust are Georgette Kodsi, Rachel Foster, and Kodsi's children. (Complaint, ¶¶ 15-17)  The fact that the Trust has been in existence for more than six years supports an allegation on "information and belief" that the beneficiaries received monies from the Trust.

13

Moreover, because Foster is Kodsi's wife (Complaint, ¶ 15), it is fair to conclude that she knew both about Sullivan's claims against Kodsi and Kodsi's problems with the SEC. Moreover, because Georgette Kodsi is the wife of Elias Kodsi who was a codefendant in the SEC's suit against Kodsi (Latham Aff., Ex. A), it is safe to assume that Georgette Kodsi knew, at a minimum, of the SEC's claims against her son, Alain Kodsi.

In addition, the beneficiaries of the Trust are made parties pursuant to Rule 19 of the Federal Rules of Civil Procedure to insure that all parties with a current interest in the Trust and the Trust assets are before the Court. Fed. R. Civ. P. 19(a)(2).

Defendants also argue that Sullivan has not sufficiently alleged Kodsi's actual intent to defraud. (Mem. at 10-11) First, as we have shown in Section III(C), Sullivan has met the Federal pleading requirements for a fraudulent conveyance claim based on actual fraud. Second, as we have shown in the same Section above, Sullivan has alleged facts supporting each of the badges of fraud which courts view as the tell-tale signs of a fraudulent conveyance.

Accordingly, Defendants' argument that Sullivan's allegations on information and belief are deficient should be rejected.

## E.    **Sullivan Has Sufficiently Identified Kodsi's Transfers to the Trust**

Defendants argues that Sullivan has failed to identify each transfer to the Trust which, Defendants argue, makes "it impossible for defendants to identify which transfers that Sullivan considers fraudulent." (Mem. at 12) Sullivan alleges that *all* of the transfers were fraudulent. (Complaint, ¶¶ 50, 59, and 65) Kodsi certainly knows which assets he transferred to the Trust. Moreover, any uncertainty in the specific transfers is due to Kodsi's efforts to "obstruct[] Sullivan's efforts to learn the details of the Trust and his transfers to the Trust . . ." (Complaint, ¶ 18)

14

Nevertheless, Defendants concede that Sullivan has specifically alleged Kodsi's transfer of CSC to the Trust. (Mem. at 12) This transfer alone is well within the statute of limitations and meets all of the requirements of an actual and constructive fraud claim. Accordingly, Defendants' motion to dismiss should be denied.

**F.     <u>Kodsi's Transfer To The Trust Have All the Indices of Fraudulent Intent</u>**

Defendants appear to argue in their Section I(D)(4) (Mem. at 12-16) that New York law allows a person to transfer all of their assets to a trust regardless of the circumstances and regardless of the intent without having those transfers attacked as fraudulent. This is not the law. By statute, New York allows a person to create a trust for any lawful purpose. EPTL § 7-1.4 ("An express trust may be created for any lawful purpose."); Restatement (Third) of Trusts § 29 (2003); Restatement (Second) Trusts § 59 (1959) ("A trust can be created for any purpose which is not illegal.") New York's Debtor Creditor Law makes fraudulent conveyances unlawful. DCL § 270, et seq.; EPTL  7-1.4; Turano, Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 17B, EPTL 7-1.14 ("A grantor or testator still may not create a trust for an unlawful purpose, such as to defraud creditors. . . ."). Accordingly, a trust, and even a family trust, is given no special treatment under New York law if the conveyances to the trust are fraudulent.

The cases cited by Defendants to support their theory are readily distinguishable and/or support Sullivan's claims. For instance, in <u>Case v. Fargnoli</u>, 182 Misc. 2d 996, 702 N.Y.S.2d 764 (N.Y. Sup. 1999), the Court stated that: "[T]he creation of a trust cannot be considered fraudulent under the Debtor Creditor Law unless the facts and circumstances which invoke the statute have been established." <u>Case</u>, 182 Misc. 2d at 1001, 702 N.Y.S.2d at 768. Thus, Defendants own cases establish that a transfer to a trust can be fraudulent just as any other transfer as long as the requirements of the Debtor Credit Law are present. The trust and the transfers to the trust in

Case were not fraudulent not because they were made to a trust, but because the transfers were made before any creditors ever existed, and because they did not render the debtor insolvent. Case, 182 Misc. 2d at 1001, 702 N.Y.S.2d at 768 ("There is no evidence that, in 1987, defendant was either insolvent or knew he would incur debts beyond his ability to pay. In fact, no such occasion arose until December 1990, some three years later.") Here, the creation of Kodsi's Trust followed on the heals of Kodsi being sued by his former partner. And, with respect to the CSC Conveyance, Kodsi made the transfer in the face of Sullivan's suit and in the face of the SEC's investigation into Kodsi's insider trading, no doubt pending at the time. Accordingly, the law as stated in Case does not defeat Sullivan's claims.

Defendants also cite Grace Plaza of Great Neck, Inc. v. Heitzler, 2 A.D.3d 780, 770 N.Y.S.2d 421 (2nd Dept 2003) for the proposition that "transfers to family members do not support fraudulent conveyance claims under section 276." (Mem. at 13) However, no where in the Court's opinion can this holding be found. Indeed, Defendants reading of Grace Plaza is contrary to New York Law. United States v. Alfano, 34 F. Supp. 2d 827, 845 (E.D.N.Y. 1999) ("Courts view *intrafamily* transfers made without any signs of tangible consideration as presumptively fraudulent.")

Defendants reliance on United States v. McCombs, 928 F. Supp 261 (W.D.N.Y. 1995) for the holding that transfers between related parties do not establish lack of good faith is likewise misplaced. In McCombs, the transferee paid the transferor nearly 85% percent of the forced sale value of the transferor's real property. Because the transferee paid substantial consideration for the property, the court held that the plaintiff must show bad faith. McCombs, 928 F. Supp at 274 ("Although the government has not proven that the value of the consideration was inadequate, the conveyance may still be set aside if the government can prove that the

16

Property was conveyed with a lack of good faith.") Some consideration *and* good faith are required to show adequate consideration under Section 272. Peterson v. Vallenzano, 849 F. Supp. 228, 231 (S.D.N.Y. 1994). Thus, contrary to Defendants' argument, the issue in McCombs was not whether a transfer between related parties is an indicia of fraud. Here, Sullivan has alleged that no consideration at all was paid for the conveyances. A complete lack of consideration makes good faith irrelevant.

Defendants have even misread Lippe v. Bairnco Corp., 249 F. Supp. 2d 357 (S.D.N.Y. 2003) by focusing on a limited passage of Judge Chin's opinion. Judge Chin's full reasoning is set forth below with the limited portion quoted by Defendants in bold:

> **No reasonable jury could find that there was anything suspicious or questionable about the transfers here. Although the transfers were not in the ordinary course of business, there were legitimate business reasons for them. Even assuming management's concern over the asbestos cases was a motivating factor, there was nothing inappropriate about a company's management looking for lawful ways to reduce the adverse impact of asbestos litigation.**
>
> These were multi-million dollar corporate transactions. The terms were negotiated and substantial consideration was paid--the transaction generated large amounts of cash for Keene. No effort was made to put that cash out of the reach of creditors; no assets were secreted away. Keene was not cash-strapped; to the contrary, it had substantial amounts of cash and other liquid assets on hand, including more than $140 million as of December 31, 1989.
>
> Lawyers and investment bankers were involved. Keene consulted with Debevoise as early as 1980 and Debevoise, in essence, warned Keene that it could not engage in transactions that had even the appearance of a fraudulent conveyance. As a consequence, Keene dropped its initial proposal to spin off Old Kaydon for *no* consideration. Instead, Keene eventually engaged in a transaction whereby it required the transferor to give some $97 million in consideration. It brought in an investment banking firm, Kidder, to render an opinion on the fairness of the consideration being given, and Kidder confirmed that fair value was being received.

Lippe, 249 F. Supp. 2d at 382-83. The portion of Judge Chin's opinion omitted by Defendants makes clear that Judge Chin placed ultimate weight on evidence of the transferor's efforts to make the transfers as arm's length as possible and that the transferor received valuable consideration for the transfers. Here, unlike in Lippe, no consideration was paid for the assets. Moreover, Sullivan has alleged numerous other badges of fraud which are inconsistent with a legitimate effort by Kodsi to simply do some estate planning.

Defendants also argue that Kodsi's Trust is not a so called "asset protection" trust established in some debtor friendly state or country. Defendants submit this argument as some sort of evidence that the Trust does not have the indicia of fraud. (Mem. at 14-15) At best, this seems to be an argument that Kodsi could have done a better job of defrauding his creditors and, therefore, he has not defrauded his creditors at all. While there may be some states or countries which may be more debtor friendly, we fail to see how this helps Defendants. If the conveyances in this case have all the ear-markings of fraudulent conveyances, we cannot see how creating the trust in a less debtor friendly state helps. In fact, it would seem more likely that the conveyances would be found fraudulent in a less debtor friendly state such as New York.

Finally, Defendants point to Paragraph 62 of the Complaint in an illogical attempt to undermine Sullivan's claims. (Mem. at 15) Paragraph 62 states that third-parties with claims against the trustee of the trust can reach directly the assets of the Trust. Defendants somehow believe this allegation defeats Sullivan's allegations that the conveyances to Kodsi's Trust were fraudulent. Not true. Sullivan has claims against the trustee of the Trust *because* Kodsi's conveyances to his Trust were fraudulent. Accordingly, Defendants cannot use the existence of a claim to defeat those very claims.

18

Defendants' argument that trusts are somehow exempt from fraudulent conveyance claims is contrary to New York Law and should be rejected by this Court.

## G.    Kodsi Was Insolvent

Defendants argue that Counts II and IV (constructive fraud) should be dismissed because Sullivan has not alleged that Kodsi was insolvent at the time of or as a result of the conveyances. (Mem. at 16-20) Not true. Sullivan has specifically alleged that: "Kodsi was insolvent or became insolvent at the time the transfers (including the CSC Conveyance) were made, and thus unable to satisfy his debts including his debt to Sullivan." (Complaint, ¶ 45) This allegation is sufficiently particular considering that Counts II and IV need not be alleged with particularity. Spanierman Gallery v. Love, 320 F. Supp. 2d 108, 113 (S.D.N.Y. 2004). Accordingly, Defendants are left with their argument that Sullivan' Complaint establishes, as a matter of law, that Kodsi was solvent at the time of the transfer. Defendants argument is based on Sullivan's allegation that: "In January 2001, Kodsi *claimed* that his net worth was *purportedly* $100,000, which did not include the value of the assets held in the Trust." (Complaint, ¶ 38 (emphasis supplied))

Insolvency is presumed when a conveyance is made without fair consideration and the burden of overcoming such presumption is on the transferee.  See, Snyder v. United States, 1995 WL 724529 *10 (E.D.N.Y. 1995).  Insolvency is determined as of the date of the transfer and is unaffected by subsequent events.  30 N.Y. Jur. 2d, Creditors' Rights and Remedies, § 307.  Thus, Kodsi will bear the burden of coming forward with some evidence that he was solvent at the time of the conveyances in questions.  On the other hand, Sullivan's Complaint raises a fair inference that Kodsi was insolvent at least following the CSC Conveyance.

Kodsi's interest in CSC at the time of the transfer was worth somewhere between $12.5 (Complaint, ¶ 20) and in excess of $20 million (Complaint, ¶ 22) when the Trust sold Kodsi's interest. Kodsi's interest may have been worth as much as $28.5 million just before the transfer. (Complaint , ¶ 21) Kodsi's transfer of CSC along with the other transfers constituted all or substantially all of Kodsi's assets. (Complaint, ¶ 43) Thus, Kodsi went from being worth as much as $28.5 million to being worth . . . well, we don't know. Kodsi's unexamined statement[5] of his net worth in January 2001 is irrelevant to his net worth seven months earlier in June 2000. Moreover, what makes up Kodsi's net worth is unknown. A large portion, if not all, of Kodsi's net worth may be exempt property which does not count. DCL § 270 ("In this article "assets" of a debtor means property not exempt from liability for his debts.") A 401(k) or other retirement plan would likely be exempt from Kodsi's creditors. At this point, we simply do not know.

Defendants also argue that because Kodsi retains access to the assets he supposedly irrevocably transferred to the Trust, he is not insolvent. (Mem. at 17) Defendants confuse the concept of Kodsi's constructive control over the Trust's assets and his legal control over those assets. Sullivan has alleged that Kodsi retains constructive control over the assets and that those assets were used to pay a substantial settlement with the SEC and to pay his living and legal expenses. (Complaint, ¶ 39) Kodsi's retention of control over the assets is as indicator of Kodsi's fraudulent intent. In contrast, Kodsi's solvency is judged based on assets legally available to his creditors. DCL § 270. If the assets in Kodsi's Trust are beyond the reach of his creditors, like Sullivan, then they cannot be used to determine Kodsi's solvency.

---

[5]    Sullivan did not adopt Kodsi's statement of his net worth. Sullivan's use of the words Kodsi "claimed" and "purported net worth" make clear that Kodsi's unexamined statement of his net worth is a ceiling not a floor (or basement) and shows the drastic reduction in Kodsi's net worth immediately on the heals of Sullivan's suit.

Defendants also argue that contingent debts against Kodsi cannot be considered as matter of law in determining whether Kodsi was insolvent. Defendants are wrong. Kodsi's debts do include contingent debts. DCL § 271(1) (definition of insolvency includes "probable liability"); Marine Midland Bank v. Stein, 150 Misc. 768, 770, 433 N.Y.S.2d 325, 327 (1980) (unmatured guaranty was "probable liability" in determining defendant's insolvency); Commercial trading Co. v. Potter Securities Corp., 26 A.D.2d 761, 762, 271 N.Y.S.2d 733, 734 (4th Dept. 1966) (absolute liability on existing debt is not required by Section 271); Chase Manhattan Bank v. Oppenheim, 109 Misc.2d 649, 651, 440 N.Y.S.2d 829, 831 (N.Y. Sup. 1981); Whether a contingent debt may render a debtor insolvent is a question of fact. Staten Island Savings Bank v. Reddington, 260 A.D. 365, 687 N.Y.S.2d 707 (2nd Dept. 1999) (requiring evidence of the probability of the contingent debt and the amount of the debt); see also In re Xonics Photochemical, Inc., 841 F.2d 198, 200 (7th Cir. 1988) (applying bankruptcy law); Nugent v. First American Bank, 1992 WL 200635 * 4 (N.D.N.Y. 1992) (applying bankruptcy law). Even Defendants' reliance on Pfohl Bros Landfill Site Steering Comm. v. Allied Waste Sys., Inc., 255 F. Supp. 2d 134 (W.D.N.Y. 2003) for the proposition that: ". . .that contingent claim is not considered in evaluating solvency until the creditor obtains judgment" is misplaced. In Pfohl Bothers, the court held against Defendants stating: "Similarly, that the conveyance in the instant case occurred before any legal action was filed which would render the Steering Committee, if successful, a judgment creditor of Defendants does not necessarily preclude the constructive fraud claim." Pfohl Bros., 255 F. Supp. 2d at 173.

In this case, Kodsi was faced with two known unliquidated debts. First, Kodsi was faced with Sullivan's claims in Illinois. Kodsi may believe that Sullivan's claims are highly speculative, but Sullivan believes otherwise. Without choosing sides, something more than the

21

parties' assessment of their claims is necessary. However, the necessary assessment of Kodsi's probable liability cannot be made on a motion to dismiss. Notably, however, given Sullivan's damages claim of $13 million in the Illinois case, a less than one percent probability of success would make Kodsi insolvent. Even considering the liquidated portion of Sullivan's damages, i.e. $6.4 million, Sullivan needs less than a 1.6 percent chance of success to show Kodsi was insolvent even given his purported net worth.

Sullivan was not the only creditor knocking at Kodsi's door. In October 2001, the SEC filed a civil suit against Kodsi for insider trading. The SEC's suit stems from Kodsi's insider trading in June 1998. (Declaration of David H. Latham, Ex. A) The SEC's suit resulted in a judgment against Kodsi of approximately $1.6 million in April 2002. (Declaration of David H. Latham, Ex. B) Because two years had elapsed between Kodsi's insider trading and the conveyance of CSC to the Trust in June 2000, the evidence will likely show that Kodsi was fully aware of the SEC's investigation into the insider trading long before the CSC Conveyance.[6]

Given both the SEC's and Sullivan's claims, it is more likely than not that Kodsi was insolvent in June 2000 following Kodsi's conveyance of CSC to the Trust. At any rate, Sullivan's allegations of Kodsi's insolvency are sufficient to survive a motion to dismiss.

However, there is another component of a constructive fraud claim, i.e., "Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors." DCL § 275; See Complaint, ¶ 47. While Sullivan's allegation on this point was limited to

---

[6]     Sullivan notes that Kodsi was a licensed stockbroker who previously worked for Goldman Sachs and Merrill Lynch. He knew the rules against insider trading, as well as the civil and criminal penalties for

22

Sullivan's suit in Illinois, the combination of Sullivan's suit and the SEC's claims make it reasonable to allege and infer that Kodsi was about to incur debts beyond his ability to pay. This is particularly true if the attorneys' fees and costs associated with the SEC's and Sullivan's claims are considered. See Shelly v. Doe, 249 A.D.2d 756, 757-58, 671 N.Y.S.2d 803, 806 (3rd Dept. 1998). See also, Interpool Ltd. v. Patterson, 890 F. Supp. 259, 265 (S.D.N.Y. 1998) (transfer in the face of pending lawsuit fraudulent as to creditors). At the time Kodsi made the CSC Conveyance, he knew, as an experienced litigant, that he was going to incur substantial legal and other expenses to defend both Sullivan's and the SEC's claims. Defendants do not argue that Sullivan has not alleged a fraudulent conveyance under DCL § 275 which is fatal to their Motion to Dismiss.

Sullivan's Complaint contains sufficient allegations of Kodsi's insolvency. This is particularly true since it is initially Kodsi's burden to prove solvency. Accordingly, Defendants' motion to dismiss on this point should be denied.

**H.    Sullivan's Claims for Damages Should Not Be Stricken**

Sullivan's *ad damnum* does not seek and should not be construed to seek any more than the law allows. If Sullivan prevails here before the Illinois Case is decided, then Sullivan requests the relief allowed by Section 279. However, if the Illinois Case is decided before this case is resolved, then Sullivan seeks the relief allowed under Section 278. Sullivan's *ad damnum* is, as all *ad damnums* are, prospective. It is premature to strike Sullivan's request for relief based on events which may or may not happen.

**I.    Leave to Amend**

---

violating them.

Defendants' Motion to Dismiss argues that Sullivan has not plead sufficient facts to state fraudulent conveyances claims. Sullivan disagrees and believes that the facts he has alleged along with the evidence he will adduce at trial will establish his claims. However, should this Court find Sullivan's Complaint wanting, Sullivan requests leave to file an amended complaint to allege additional evidence of Defendants' liability.

## IV. CONCLUSION

For the foregoing reasons, Sullivan's requests that this Court deny Defendants' Motion to Dismiss.

Dated: August 27, 2004

        THE LAW OFFICES OF DAVID H. LATHAM
        David H. Latham
        150 North Wacker Drive
        Suite 1400
        Chicago, Illinois 60606
        (312) 782-1910

        LAW OFFICE OF DANIEL L. ABRAMS, PLLC

By: _____
        Daniel L. Abrams
        Law Office of Daniel L. Abrams, PLLC
        67 Wall Street, 22nd Floor
        New York, NY 10005-3111
        (212) 245-1810

        *Attorneys for Plaintiff Brian T. Sullivan*

24