UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BRIAN T. SULLIVAN,                                          :

                        Plaintiff,              :          04 CV 3994 (GEL) (JCF)

   -- against --                                           :

ALAIN KODSI; LOUIS GRECO, individually                      :
and as successor trustee of the Gamcrefk Trust;
the GAMCREFK TRUST; GEORGETTE                               :
KODSI; and RACHEL FOSTER, individually
and as guardian of her children,                            :

                        Defendants.             :
------------------------------------------------------------x

REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
AND IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

                                                                                                Jonathan A. Willens, Esq. (JW-9180)
                                                                                                JONATHAN A. WILLENS LLC
                                                                                                217 Broadway, Suite 707
                                                                                                New York, New York 10007
                                                                                                Tel. (212) 619-3749
                                                                                               *Attorney for the Defendants*

TABLE OF CONTENTS

PRELIMINARY STATEMENT …….…………………………………………….. 1

ARGUMENT …………………………………………………………………….. 3

POINT I

THE FIRST AND THIRD CLAIMS
UNDER DCL § 276 MUST BE DISMISSED ………………..………………….. 3

    A. The Complaint Fails to Satisfy Rule 9(b) ……………..………………….. 3

        1. The Allegations against Mr. Greco,
           Ms. Kodsi and Ms. Foster are Inadequate …………………………….. 3

        2. The Fraud Allegations against Mr. Kodsi Are Inadequate ……………. 6

    B. The Statute of Limitations ………………………….…………………. 7

POINT II

THE SECOND AND FOURTH CLAIMS
UNDER DCL § 273 MUST BE DISMISSED ………………………………………….. 9

    A. The Complaint Fails to Allege Insolvency ………….....………………… 9

    B. The $13 Million Debt to Sullivan is Purely Speculative ………………..... 9

    C. Sullivan Has No Claim Under DCL Section 275 …………………………. 10

POINT III

PLAINTIFF'S CLAIMS FOR DAMAGES SHOULD BE STRICKEN ………………… 11

POINT IV

PLAINTIFF'S MOTION TO STRIKE SHOULD BE DENIED ………………………… 12

CONCLUSION ………………………………….……………………………….. 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
BRIAN T. SULLIVAN,                                              :

                Plaintiff,                 :         04 CV 3994 (GEL) (JCF)

  -- against --                                                 :

ALAIN KODSI; LOUIS GRECO, individually                          :
and as successor trustee of the Gamcrefk Trust;
the GAMCREFK TRUST; GEORGETTE                                   :
KODSI; and RACHEL FOSTER, individually
and as guardian of her children,                                :

                Defendants.                :
----------------------------------------------------------------x

### REPLY MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
### AND IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

      Defendants Alain Kodsi, Louis Greco, the GAMCREFK Trust, Georgette Kodsi and Rachel Foster respectfully submit this reply memorandum of law in support of their motion, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, to dismiss the complaint. In Point IV below, defendants also oppose plaintiff's motion to strike certain portions of the declaration submitted in support of the motion to dismiss.

Preliminary Statement

      Sullivan's opposition brief concedes most of the key points that require dismissal of this fraudulent conveyance action. First, there is no dispute that Sullivan's status as a "creditor" of defendant Alain Kodsi is based exclusively on a $13 million claim now pending in Illinois state court. There has been no trial, no decision on the merits, and no judgment awarded in that action.

      Second, Sullivan's allegation that Mr. Kodsi was rendered "insolvent" by the transfers to his family trust are based on nothing more than Sullivan's belief that Mr. Kodsi had insufficient funds to

pay his $13 million claim. Sullivan concedes that "we don't know" Mr. Kodsi's net worth in June 2000.[1] He asks the Court to presume that Mr. Kodsi was insolvent, but the facts alleged in the complaint refute any such presumption.

Third, Sullivan concedes that he has no basis for his claims against Louis Greco, Rachel Foster or Georgette Kodsi. None of them had anything to do with the allegedly fraudulent transfers.

Fourth, there is nothing in the complaint that provides the necessary factual support for Sullivan's allegation that the family trust is a sham. On the contrary, the complaint alleges that the trust was created *before Sullivan had asserted any claim against Mr. Kodsi*. The subsequent transfers to the trust shared the same "original purpose of the trust." Complaint ¶ 19. With no evidence of improper intent, Sullivan cannot transform these legitimate transactions into a fraudulent scheme.

Finally, Sullivan concedes that nearly all of the relief demanded in the complaint is premature. This includes the demand to attach and levy on the property of the family trust, the demand that *all defendants* pay $13 million in damages to Sullivan, and the demand for punitive damages. These demands – like this entire action – are simply not ripe. They are based, as Sullivan admits, on "events which may or may not happen." Pl. Br. at 23. The proper response is to dismiss those premature demands, and reinstate them in the unlikely event that Sullivan wins a judgment in Chicago.

---

[1] *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint ("Pl. Br."), at 20.

ARGUMENT

POINT I

THE FIRST AND THIRD CLAIMS UNDER DCL § 276 MUST BE DISMISSED

A.  The Complaint Fails to Satisfy Rule 9(b)

A plaintiff asserting fraudulent conveyance claims must satisfy "the heightened pleading requirements of Fed. R. Civ. P. 9(b)." *United Feature Syndicate v. Miller Features Syndicate*, 216 F. Supp.2d 198, 220 (S.D.N.Y. 2002); *Atlanta Shipping Corp., Inc. v. Chemical Bank,* 818 F.2d 240, 251 (2d Cir. 1987). This Court explained the four-point test for allegations that are subject to Rule (b) in *United Feature Syndicate*. *See* Defendants' Opening Brief at 6-7.

Sullivan never addresses *United Feature Syndicate*. Instead, he argues that the requirements of Rule 9(b) are satisfied because he used the language of Form 13 from the Appendix of Forms, pursuant to Fed. R. Civ. P. 84. *See* Pl. Br. at 6-7. That form has *one sentence* describing a generic fraudulent conveyance. *Id.* at 7 (quoting Form 13, ¶ 4). By its terms, the form does not apply to this action, since it is limited to claims asserted under Rule 18(b). Moreover, the complaint fails to meet even the low standard of Form 13 because it relies on allegations based on "information and belief." It also fails to "specify the dates and nature of the transactions" other than the Connector Service Transfer. *See Spanierman Gallery, PSP v. Love*, 320 F.Supp.2d 108, 114 (S.D.N.Y. 2004) (upholding complaint that satisfied Form 13 requirements).

1.  The Allegations against Mr. Greco, Ms. Kodsi and Ms. Foster are Inadequate.

The complaint never states how the defendants other than Mr. Kodsi were involved in the transfers to the trust. At a minimum, Rule 9(b) requires specific allegations against each defendant. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint ("Deft. Br."), at 9-10; *Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 310 (S.D.N.Y.

3

Bankr. 1999).

Contrary to Rule 9(b) – and Form 13 – all of the substantive allegations against Mr. Greco are asserted on information and belief. Complaint ¶¶ 26, 29-31. Sullivan argues that this defect is immaterial because the allegations are "irrelevant" to his claim. Pl. Br. at 12. There are no other allegations in the complaint charging Mr. Greco with any wrongdoing, however, so there is no basis for any personal liability against him. He was not a "transferee" of any allegedly fraudulent transfer to the Trust, *id.,* since he was not the trustee at the time of such transfers.

Sullivan tries to overcome this gap in his pleading by arguing that "on the day that Greco became the successor trustee, he knew . . . that Sullivan had pending claims against Kodsi." Pl. Br. at 13. This is no reason to impose personal liability on Mr. Greco. Nor can Sullivan manufacture a claim against Mr. Greco as a "subsequent transferee." *Id.* at 11. He cites sections of The Restatement (Second) of Trusts that refer to claims based on the trustee's own conduct, not the conduct of his predecessors. He also relies on *Kirchner v. Muller*, 280 N.Y. 23, 28, 19 N.E.2d 665 (1939), but that case concerns claims against a trustee for torts "which occurred during his administration of the estate." There is no authority for the proposition that a trustee may be held personally liable for a transfer to the trust that occurred long before he had any connection to the trust.

All that Sullivan can properly allege is that Greco may be "liable in his representative capacity as trustee," but only if Sullivan proves that he is "entitled to have his claims against Kodsi satisfied out of the assets held by Greco in trust." Complaint ¶ 63. At this stage, there is no claim against Mr. Greco.

The allegations against Georgette Kodsi and Rachel Foster are deficient for the same reason. The only allegation that they engaged in wrongdoing is paragraph 33: "On

4

information and belief, each of the Trust's beneficiaries have received or are entitled to receive the benefits of the assets fraudulently conveyed into the Trust." This allegation is not sufficient to state a claim against the transferees of a fraudulent conveyance. *See* Deft. Br. at 10. The complaint alleges that the trust received the Connector Service Transfer, and promptly sold the assets for cash to a third party. There is no allegation that Ms. Foster or Ms. Kodsi participated in either the transfer or the disposition of those assets.

As he did in connection with the claims against Mr. Greco, Sullivan again responds by arguing that "it is safe to assume" that Ms. Foster and Ms. Kodsi knew about an SEC investigation that was pending against Mr. Kodsi at the time of the Connector Service Transfer. Pl. Br. at 14. But the SEC's claim was satisfied years ago, *see* Complaint ¶ 39, which suggests that there was *no* fraud. It is simply not enough to "assume" fraudulent intent in the absence of any specific allegation of wrongdoing. *See In re Crazy Eddie Securities Litigation*, 802 F. Supp. 804, 816-17 (E.D.N.Y. 1992) ("[a]bsent specific allegations supporting an actual intent to defraud creditors, the claim is insufficient" under Rule 9(b), including time, place and details of alleged fraudulent acts).

Finally, Sullivan argues that Ms. Kodsi and Ms. Foster are necessary parties who are properly joined pursuant to Fed. R. Civ. P. 19(a). *See* Pl. Br. at 14. If the complaint merely described the interest of the beneficiaries in the assets of the trust, then joinder under Rule 19 might be appropriate.[2] But Sullivan has alleged that the beneficiaries are personally liable to him for $13 million as participants in the allegedly fraudulent transfers. The complaint does not state a claim against the beneficiaries for any such relief.

---

[2] *See generally Nastro v. D'Onofrio*, 263 F.Supp.2d 446 (D. Conn. 2003); *Bankers Trust Co. v. Manufacturers Nat. Bank of Detroit*, 139 F.R.D. 302 (S.D.N.Y. 1991).

5

2.  <u>The Fraud Allegations Against Mr. Kodsi Are Inadequate</u>

The complaint falsely alleges that "Kodsi has admitted under oath that the purpose of the Trust is to shield Kodsi's assets from his business activities *and creditors*." Complaint, ¶¶ 14, 19 (emphasis added). Sullivan continues to rely on Mr. Kodsi's deposition testimony as proof of his fraudulent intent. Pl. Br. at 8. In fact, the testimony refutes any suggestion that Mr. Kodsi created the trust for an improper purpose. *See* Deft. Opening Br. at 10-11; Declaration of Jonathan A. Willens, dated July 29, 2004 (the "Willens Dec."), Ex. C at 376-79.

By contrast, in *Wall Street Associates v. Brodsky*, 257 A.D.2d 526, 684 N.Y.S.2d 244, 248 (1st Dept. 1999), the transferor specifically admitted that he transferred shares to his wife to avoid his creditors, including plaintiff. Sullivan's reliance on this decision is misplaced. *See* Pl. Br. at 8. Mr. Kodsi created the trust before Sullivan had any claim, and the subsequent transfers were (as the complaint acknowledges) part of the "original purpose" of the trust. *See* Complaint ¶ 19. In other words, Mr. Kodsi planned these transfers for legitimate reasons before Sullivan was a creditor under the fraudulent conveyance laws.

In the absence of "direct proof" of fraudulent intent, Sullivan relies on the so-called "badges of fraud" to support his allegation that conveyances to the trust were improper. *See* Pl. Br. at 8-10. These "badges" are present in any family transfer, whether it is a hasty effort to park assets with a debtor's spouse or, as here, a careful strategy of asset-management, planned and approved by counsel to minimize taxes. The cases cited in defendants' opening brief, particularly *Case v. Fargnoli*, 182 Misc.2d 996, 702 N.Y.S.2d 764 (N.Y. Sup. 1999), and *Lippe v. Bairnco Corp.*, 249 F. Supp.2d 357 (S.D.N.Y. 2003), *aff'd*, 2004 WL 1109846 (2d Cir. 2004), demonstrate that it is not enough to allege that Mr. Kodsi created a family trust when he knew that there were potential claims

6

against him. Instead, the courts routinely look at the specific features of a trust to determine whether it is a sham. *See, e.g., Interpool Ltd. v. Patterson*, 890 F. Supp 259, 263 (S.D.N.Y. 1995).

Sullivan mischaracterizes this argument. Defendants do not contend that family trusts are "exempt from fraudulent conveyance claims," or that they are entitled to "special treatment." Pl. Br. at 15, 19. The point is simply that Rule 9(b) requires more than a general allegation that a transfer was made to a family trust.

Notably, Sullivan does not dispute that the Kodsi family trust is a permanent and irrevocable transfer of assets for the benefit of Mr. Kodsi's children. *See* Willens Dec., Ex. D at 28-29. It has none of the attributes of an asset protection trust. For example, Mr. Kodsi cannot recover the assets transferred to the trust after a fixed period of time, or after the Illinois Action is dismissed.

Sullivan argues that the trust is "presumptively fraudulent" because, as the complaint alleges, Mr. Kodsi transferred assets to the trust "without fair consideration." Pl. Br. at 10; Complaint ¶ 65. The only support for this allegation is Mr. Kodsi's deposition testimony that he "received nothing" when assets were transferred to the trust. Pl. Br. at 10; Willens Dec., Ex. C at 378. In creating the trust, however, Mr. Kodsi received an undertaking that the trustee would support Mr. Kodsi's children, as well as his wife and mother, by paying their living expenses, tuition, housing costs and other financial needs. *See* Willens Dec., Ex. D at 8-10. Since Mr. Kodsi was legally responsible for the support of his children, this undertaking was fair consideration for the transfer of assets to the trust. He may have "received nothing" in the form of cash or other payment, but he certainly received valuable consideration from the trustee.

B. The Statute of Limitations

Sullivan concedes that the applicable limitations period is six years. *See* Pl. Br. at 5. Therefore, any claim under DCL section 273 based on a conveyance that occurred before May 26,

7

1998, is time-barred. In addition, any claim under section 276 based on a conveyance that occurred before that date is time-barred *unless* plaintiff demonstrates that he discovered the alleged fraud on or after May 26, 2002.

Sullivan argues, without support, that the statute of limitations was tolled by the filing of fraudulent conveyance claims against Mr. Kodsi in two state court actions in Illinois. *See* Pl. Br. at 5-6. Under New York law, however, an action filed in a sister state does *not* toll the New York limitations period. *Lehman Bros. Inc. v. Hughes Hubbard & Reed*, 245 A.D.2d 203, 665 N.Y.S.2d 900 (1st Dept. 1997); *Popkin v. National Benefit Life Ins. Co.*, 711 F. Supp. 1194, 1198 (S.D.N.Y. 1989) (citing *Baker v. Commercial Travelers Mutual Accident Ass'n,* 3 A.D.2d 265, 161 N.Y.S.2d 332 (4th Dept. 1957)). Therefore, at a minimum, the Court should dismiss the non-fraud claims under section 273 based on transfers that occurred before May 26, 1998, because the two-year discovery rule does not apply to those claims.

In addition, with respect to the fraud claims under section 376, defendants have met their "burden of establishing by *prima facie* proof that the limitations period has expired since the plaintiff's claims accrued." *Katt v. City of New York*, 151 F.Supp.2d 313, 348-49 (S.D.N.Y. 2001) (quoting *Overall v. Estate of Klotz,* 52 F.3d 398, 403 (2d Cir. 1995)). Sullivan knew of these claims by January 2002, when he filed the first action in Illinois. *See* Pl. Br. at 5. He deposed Mr. Kodsi in April 2002, where he had an opportunity to ask about other transfers to the trust. In light of the heightened pleading requirements of Rule 9(b) – which are intended to avoid this problem by requiring that the date of each act of fraud be specified in the complaint – the Court should therefore dismiss any claim under Section 276 based on a conveyance that occurred before May 26, 1998.

8

POINT II

THE SECOND AND FOURTH CLAIMS UNDER DCL § 273 MUST BE DISMISSED

A.  The Complaint Fails to Allege Insolvency

As noted in defendants' opening brief, the conclusory allegation that Mr. Kodsi was rendered insolvent by the Connector Service Transfer is refuted by the specific allegations in the complaint. *See* Deft. Br. at 16-17.  Sullivan alleges that Mr. Kodsi's net worth was $100,000 in January 2001, shortly after the Connector Service Transfer.  *See* Complaint, ¶ 38.  He also alleges that Mr. Kodsi was able to pay $1 million to the Securities and Exchange Commission in 2001.  *Id.,* ¶ 39.

Sullivan cannot walk away from these allegations by asserting that he is entitled to a "presumption" of insolvency. Pl. Br. at 19.  This presumption makes no sense here.  An individual with a net worth of $100,000 is not insolvent, and the complaint does not allege that Mr. Kodsi has failed to pay any of his current obligations.  Sullivan fails to address *Henry v. Field*, 205 F. Supp. 197, 201 (S.D.N.Y. 1962), where Judge Weinfeld found that the defendant was not insolvent after a transfer because he retained substantial assets.   Similarly, Sullivan argues that Mr. Kodsi was insolvent in 2000 because "Sullivan was not the only creditor knocking on Kodsi's door."  Pl. Br. at 22.  But the complaint alleges that the other creditor, the S.E.C., was paid.  *See* Complaint ¶ 39.

Sullivan also tries to plead ignorance, undercutting his own allegation that Mr. Kodsi was insolvent in June 2000 by admitting "we simply do not know" whether he was insolvent or not.  Pl. Br. at 20.  Since insolvency is one of the necessary elements of a claim under DCL section 273, this admission requires dismissal of his claims under that statute.

B.  The $13 Million Debt to Sullivan is Purely Speculative

With no other alternative, Sullivan argues that he should be permitted to allege insolvency by counting his contingent $13 million claim as if the Illinois court had already awarded judgment in

9

his favor. Pl. Br. at 21. This strategy fails because the value of the pre-judgment claim now pending in Illinois is "entirely speculative." *Shelly v. Doe*, 249 A.D.2d 756, 671 N.Y.S.2d 803, 806 (3rd Dept. 1998).

Sullivan relies on cases where, at the time of the fraudulent transfer, the defendant had a clear obligation to pay an existing debt. *See Pfohl Brothers Landfill Site Steering Committee v. Allied Waste Systems, Inc.*, 255 F. Supp.2d 134, 174 (W.D.N.Y. 2003) (liability "already established" at time of transfer); *Marine Midland Bank v. Stein*, 105 Misc.2d 768, 433 N.Y.S.2d 325 (N.Y. Sup. 1980) (loan guaranteed by defendant); *Staten Island Sav. Bank v. Reddington*, 260 A.D.2d 365, 687 N.Y.S.2d 707 (2nd Dept. 1999) (same); *Chase Manhattan Bank v. Oppenheim*, 109 Misc.2d 649, 440 N.Y.S.2d 829 (N.Y. Sup. 1981) (corporate debt guaranteed by defendant).$^{3}$ These cases have no bearing here, because the alleged oral contract at issue in the Illinois Action is not a guarantee. It may not exist at all, and even if Sullivan is able to prove a breach of contract, he has not alleged that Mr. Kodsi's obligation under the contract has any definite value. Like the court in *Shelly,* this Court should find that the alleged debt is too speculative to be a "probable liability" under DCL section 271.

C.  Sullivan Has No Claim Under DCL Section 275

Unable to prove insolvency, Sullivan turns to section 275 of the Debtor and Creditor Law, even though the complaint does not purport to seek relief under that statute. Section 275 has no insolvency requirement. Instead, it applies to debtors who allow their assets to fall below the level necessary to pay debts that are regularly due, such as rents, salaries or taxes. Like section 273,

---

$^{3}$ The remaining cases cited by plaintiff were not decided under New York law.

section 275 cannot be construed to cover purely speculative liabilities, like those described in the complaint.[4]

Sullivan fails to respond to defendants' argument that his claim should be asserted under section 273-a of the Debtor and Creditor Law, *if Mr. Kodsi fails to pay any final judgment that Sullivan obtains in the Illinois action.* Deft. Br. at 18-19. By alleging that Mr. Kodsi is insolvent solely because he cannot pay a contingent $13 million claim, Sullivan is seeking the benefits of section 273-a before he gets a judgment. This defect is illustrated by his scramble to find a statute that fits his claim. The proper statute is section 273-a, and his claim under that statute is not yet ripe.

POINT III

PLAINTIFF'S CLAIMS FOR DAMAGES SHOULD BE STRICKEN

Sullivan admits that he has no basis for three of the demands set forth in the complaint. Pl. Br. at 23. Without support, he argues that he should be permitted to assert these demands because they depend on "events which may or may not happen." *Id.* In other words, he asks the court (i) to maintain his claim for an attachment and levy even though the relevant statute prohibits that relief, (ii) to allow his claim for compensatory damages even though he has suffered no injury, and (iii) to sustain a claim for punitive damages that simply cannot be asserted in a fraudulent transfer case. *See* Deft. Br. at 21-22. These claims for relief –against all of the defendants, including Mr. Kodsi's wife and mother – are clearly asserted for *in terrorem* effect. The court should strike them from the complaint.

---

[4] Sullivan also suggests that Mr. Kodsi must have known about future legal expenses, but that argument is based on mere speculation that is nowhere alleged in the complaint. Pl. Br. at 23.

11

POINT IV

PLAINTIFF'S MOTION TO STRIKE SHOULD BE DENIED

Sullivan moves for an order striking certain paragraphs of the declaration submitted in support of defendants' motion to dismiss the complaint. The purpose of the declaration was to inform the Court about the Illinois Action and the two other cases filed by Sullivan in Delaware and Pennsylvania. The present action is based on the same claims for fraudulent transfer that Sullivan has asserted against Mr. Kodsi in those other cases. Under these circumstances, it would have been a disservice to the Court to ignore those actions, as Sullivan apparently would have preferred. *See* Plaintiff's Memorandum of Law in Support of His Motion to Strike the Declaration of Jonathan A. Willens ("Strike Br.") at 2 (declaring the Illinois Action "irrelevant").

The Willens Declaration makes it clear that the information is based in part on hearsay. *See* Willens Dec., ¶ 2 ("This declaration is based on my personal knowledge of this action and on a review of documents relating to the three other actions"). That is not a basis for striking the declaration. The alternative – submitting affidavits from three attorneys handling the other cases – would have simply added to the cost of litigation without materially changing the content of the declaration.

Sullivan's counsel disagrees about the proper terminology for certain events in the Illinois Action. It is not material whether his motion for attachment was denied or withdrawn after the court told Sullivan's counsel that the motion would be denied. The point is that Sullivan is asking for relief here that he tried and failed to obtain in the Illinois Action. Similarly, whether Illinois court dismissed Sullivan's previous complaints in whole or in part is not the issue. *See* Strike Br. at 3. The fact that the current complaint in the Illinois Action is the Fourth Amended Complaint speaks for itself. *See* Willens Dec., Ex. B.

By filing his motion to strike, Sullivan has afforded himself an opportunity to present his view of the Illinois Action and the other cases that he has filed. He has even offered a theory that it is somehow Mr. Kodsi's fault that there are now four actions alleging that the same transfer was fraudulent. *See* Pl. Br. at 11, n.4.[5] The Court now has substantial information on those cases. Since it is obvious that those cases are closely related to this action, defendants acted appropriately by bringing the information to the Court's attention. No purpose would now be served by striking portions of counsel's declaration.

## CONCLUSION

For all of these reasons, plaintiff's motion to strike portions of counsel's declaration should be denied. Defendants' motion to dismiss the complaint should be granted.

Dated: New York, New York
September 9, 2004

JONATHAN A. WILLENS LLC

By: _____
Jonathan A. Willens, Esq. (JW-9180)
217 Broadway, Suite 707
New York, New York 10007
Tel. (212) 619-3749
Fax (800) 879-7938
e-mail jawillens@briefworks.com

---

[5] This theory starts with the faulty premise that Sullivan must sue every current and former trustee and all of the trust's beneficiaries in order to answer a simple question: was the Connector Service Transfer a fraudulent conveyance? Since the Chicago court has agreed to answer that question at the same time as it resolves Sullivan's contract claim, the actions filed in New York, Pennsylvania and Delaware serve no legitimate purpose.

13