

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
BRIAN T. SULLIVAN,

      Plaintiff,

  -against-

ALAIN KODSI, LOUIS GRECO, individually
and as successor trustee of the GAMCREFK
TRUST, the GAMCREFK TRUST,
GEORGETTE KODSI, and RACHEL FOSTER,
individually and as guardian of her children,

      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

04 Civ. 3994 (GEL)

**OPINION AND ORDER**

David H. Latham, Law Offices of David H. Latham, Chicago, IL, and Daniel L. Abrams, Law Office of Daniel L. Abrams PLLC, New York, NY, for Plaintiff Brian T. Sullivan.

Jonathan A. Willens, Jonathan A. Willens LLC, New York, NY, for Defendants Alain Kodsi, Louis Greco, GAMCREFK Trust, Georgette Kodsi, and Rachel Foster.

GERARD E. LYNCH, District Judge:

  Plaintiff, Brian T. Sullivan, sues defendants Alain Kodsi, the GAMCREFK Trust (formerly known as the Kodsi Family Trust), Louis Greco (individually and as successor trustee of the GAMCREFK Trust), Georgette Kodsi (the mother of Alain Kodsi), and Rachel Foster (the wife of Alain Kodsi, individually and as guardian of her children) for fraudulent conveyance, pursuant to New York Debtor & Creditor Law ("NYDCL") § 270 et seq.

  Defendants move to dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6), and as to certain claims, for failure to meet the heightened pleading requirements of

Fed. R. Civ. P. 9(b). The motion to dismiss will be denied, except as to certain defendants and duplicative claims. Many of the arguments pressed by defendants concern issues of fact and are thus more appropriately raised in a motion for summary judgment, pursuant to Fed. R. Civ. P. 56, or at trial.

## BACKGROUND

For the purposes of this motion, the facts alleged in plaintiff's Complaint must be taken as true, and all reasonable inferences must be drawn in the plaintiff's favor. Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004); Bolt Elec. Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995).

The instant Complaint originates in an action currently pending in Illinois state court (the "Illinois case"), and filed in February 2000. (Compl. ¶¶ 34–35.) In the Illinois case, plaintiff sues defendant Alain Kodsi on a breach of contract claim. Plaintiff claims that although he fulfilled his part of an agreement with Kodsi and a third business partner (not involved in this case) to identify Industrial Power Coatings, Inc. ("IPC") as a sound investment prospect, he was later denied the agreed upon right to invest in up to a one-third interest in the IPC acquisition. (Compl. ¶ 35.) Plaintiff seeks damages against Kodsi of "at least $13 million." (Compl. ¶ 36.) As a result of this pending litigation, plaintiff claims to be a creditor of Kodsi. (Compl. ¶ 37.)

Defendant Kodsi created the Kodsi Family Trust (the name of which was later changed to the GAMCREFK Trust) (the "Trust") at the end of December 1997, a few weeks after Kodsi was sued by a former business partner (in an action unrelated to the Illinois case or the present complaint). (Compl. ¶¶ 9–10.) Under the Trust agreement, the Trust is governed by New York state law. (Compl. ¶ 11.) Kodsi's mother, Georgette, wife, Rachel Foster, and children are the

beneficiaries of the Trust. (Compl. ¶¶ 15–17.)

Among the assets that were allegedly transferred into the trust, plaintiff has identified one as a June 2000 transfer of Kodsi's interest in the Connector Service Corporation ("CSC Transfer"). Plaintiff claims that this interest had a value of more than $20 million at the time of transfer. (Compl. ¶¶ 19–21.) Plaintiff further claims that the interest was eventually sold by the Trust to a third-party for a sum in excess of $20 million in February 2001. (Compl. ¶¶ 22.)

Plaintiff alleges that any and all of the transfers that Kodsi made to the Trust between its creation in December 1997 and June 2000 were made "with the actual intent to hinder, delay or defraud Kodsi's creditors including [plaintiff]." (Compl. ¶ 46.) In support of this claim, plaintiff points to sworn deposition testimony taken from Kodsi in April 2002, in which Kodsi states that transfers were made to the Trust to "insulate [Kodsi's] investments from any business activities that [Kosdi] was involved with." (Id.) Plaintiff further claims that defendants engaged in constructive fraud by transferring assets into the Trust, including by making the CSC Transfer, thereby rendering Kodsi insolvent and placing the assets out of reach of his creditors, including plaintiff. (Id. ¶¶ 40–45, 47.)

Plaintiff seeks relief in the form of a money judgment against defendants and the nullification of the allegedly fraudulent transfers, as well as attachment and levy against the assets to secure their availability should he receive a judgment in the Illinois case. (Compl. ¶ 66.) He also seeks an injunction against any further disposition of assets of the Trust as well as costs and attorneys' fees. (Id.) Regarding the claims for actual fraudulent conveyance, plaintiff seeks punitive damages. (Id.)

3

## DISCUSSION

Defendants now move to dismiss plaintiff's Complaint in its entirety pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).[1]

I. <u>Standard on Motion to Dismiss</u>

As outlined above, when deciding a motion to dismiss, the facts as alleged in plaintiff's Complaint must be taken as true, and all inferences must be drawn in plaintiff's favor.

This Court will dismiss a complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45–46 (1957). In the context of allegations of fraud, the Court may also dismiss a complaint if the plaintiff fails to meet the pleading requirements of Fed. R. Civ. P. 9(b), which dictate that "circumstances constituting fraud or mistake shall be stated with particularity." <u>Id</u>. Defendants move to dismiss the Complaint based on defects in the pleading, and in the alternative because certain claims are time-barred and/or are not properly pressed against certain defendants. The sufficiency of the pleadings is discussed first, before turning to analysis of whether any claims are time-barred, and against whom the claims may survive.

---

[1] Plaintiff separately moves to strike ¶¶ 4–12 of the declaration submitted in support of defendants' motion to dismiss ("Willens Declaration"), and, in their briefing, defendants ask the Court to strike certain of plaintiff's damages claims. Insofar as the paragraphs in the Willens Declaration are not necessary to deciding the present motion to dismiss, and the Court has not relied upon them in reaching its decision, the motion is moot. Defendants request that certain of plaintiff's damages claims be stricken, as far in excess of what New York law permits, given that Sullivan's claims will not mature until there is a judgment in the pending Illinois case, and therefore, at present, he is only entitled to seek relief under NYDCL § 279, which governs creditors without mature claims. Defendants also contend that punitive damages are never appropriate to fraudulent conveyance claims. (D. Mem. 21–23.) If and when this case is heard on the merits, it will then be proper to entertain motions limiting the relief plaintiff may seek, which may indeed turn on whether a judgment has been entered in the Illinois case in the interim, as well as other considerations. Until then there is little to be gained by precluding plaintiff from prospectively seeking a range of damages.

II. Actual Fraud: Claims One and Three

Claims One and Three are both brought under NYDCL § 276. (Compl. ¶¶ 50, 59.) NYDCL § 276 requires that the defendants had "actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors." Claim One is brought against Kodsi and Greco (the trustee) individually. Claim Three is brought against Kodsi, Greco as trustee, the Trust, Georgette Kodsi and Rachel Foster (individually, and as guardian of her and Kodsi's children). Both claims are brought as to all transfers to the Trust from its creation in late December 1997 through June 2000.

Defendants argue that both Claims One and Three, which allege actual fraud and are therefore subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b), fail to state "the circumstances constituting fraud . . . with particularity." The particularity requirement for averments of fraud serves three functions: (1) enabling a defendant to identify the allegedly fraudulent behavior in order to mount a defense with regard to those actions; (2) protecting defendant by prohibiting a complainant from making character-damaging allegations that have no basis in provable fact; and (3) reducing the number of strike suits. See Di Vittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987).

Citing to the Second Circuit, this Court has previously held that to state with "particularity" means that:

> [A]llegations of fraud cannot ordinarily be based upon information and belief. Instead, the complaint must specify the "particulars" of the alleged fraud—including, for example, the time, place, particular individuals involved, and specific conduct at issue.

United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F. Supp. 2d 198, 221 (S.D.N.Y. 2002) (citing Luce v. Edelstein, 802 F.2d 49, 54 & n.1 (2d Cir. 1986) (internal

5

quotation marks omitted)).

Plaintiff has certainly met this burden, at least with regard to the CSC Transfer. For the CSC Transfer, plaintiff has identified the approximate date of the transfer, as well as the interest involved. He has further identified the party making the transfer (Kodsi) as well as the recipient (the trustee and the Trust). (Compl. ¶ 19.) Plaintiff also cites sworn testimony taken from the defendant that could be understood by a finder of fact to suggest that Kodsi intended to fraudulently hide his assets to protect them from his creditors. (Compl. ¶ 46.)

As to any other transfer made to the Trust—even though no other transfer is named with similar specificity—plaintiff has also met this burden. The Second Circuit has held that "[d]espite the generally rigid requirement that fraud be pleaded with particularity, allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990) (citing Luce, 802 F.2d at 54 n.1). Where facts are peculiarly within the opposing party's knowledge, as might be the case where private, financial transfers are involved, a complaint may base allegations on information and belief, provided that it "adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." Id. Courts may rely on certain "badges of fraud" in finding the requisite "strong inference of fraud," including:

> (1) the lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors;

6

>and
>(6) the general chronology of the events and transactions under inquiry.

In re Kaiser, 722 F.2d 1574, 1582–83 (2d Cir. 1983) (borrowing the characterization of these badges from the court in In re May, 12 B.R. 618, 627 (Bankr. N.D. Fla. 1980)).

Several of these factors are allegedly present here. Plaintiff alleges that Kodsi received no consideration for any of the transfers to the Trust (Factor One). (Compl. ¶ 44.) There is a close familial relationship between Kodsi and the beneficiaries of the Trust (Kodsi's mother, wife and children) (Compl. ¶¶ 15–17), and plaintiff claims that Kodsi has continued to retain "control of, and the benefit of the assets held in the Trust" (Factors Two and Three). (Compl. ¶ 39.) Further, plaintiff argues that even if one accepts that Kodsi's net worth was $100,000 in January 2001, by that time Kodsi had transferred nearly all of his much more substantial assets into the Trust (Factor Four). (Compl. ¶¶ 38, 43.) Finally, plaintiff also claims that the timing of the creation of the Trust, as well as Kodsi's continued transfers of the lion's share of his assets into the Trust was done specifically to avoid having to pay judgments in pending suits, including the Illinois case (Factors Five and Six). (Compl. ¶¶ 9, 10, 40–43.)

Plaintiff has thus met the Fed. R. Civ. P. 9(b) pleading requirements as to Claims One and Three, and as both Claims One and Three state a claim upon which relief can be granted, they survive the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), at least as to certain defendants.

III. Constructive Fraud: Claims Two and Four

Unlike Claims One and Three, Claims Two and Four are not brought based upon a theory of actual fraud. Instead, these claims assert constructive fraud, based on NYDCL § 273, which

7

states:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

Id. Claim Two is brought against Kodsi and Greco (the trustee) individually. Claim Four is brought against Kodsi, Greco as trustee, the Trust, Georgette Kodsi and Rachel Foster (individually, and as guardian of her and Kodsi's children). Both claims are brought against all transfers to the Trust from its creation in late December 1997 through June 2000.

Claims of constructive fraud do not need to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). "[D]espite the statutory label of 'fraudulent conveyance,' [they do] not require an intent to deceive or any of the traditional elements of fraud." Spanierman Gallery, PSP v. Love, 320 F. Supp. 2d 108, 113 (S.D.N.Y. 2004) (quoting Intuition Consol. Group, Inc. v. Dick Davis Publ'g Co., No. 03 Civ. 5063, 2004 WL 594651 (S.D.N.Y. Mar. 25, 2004)). Thus, the issue of specificity of pleading is not before the Court with regard to Claims Two and Four.

Instead, defendants move to dismiss on the ground that the Complaint fails to allege insolvency, an element required by NYDCL § 273. (D. Mem. 16–20.) However, plaintiff alleges insolvency on the face of the Complaint: "Kodsi was insolvent or became insolvent at the time of the transfers." (Compl. ¶¶ 42, 45, 47.) Defendants press a number of facts, which they claim contradict plaintiff's allegation of insolvency, such as Kodsi's purported net worth of $100,000 following the CSC Transfer, and his apparent ability to satisfy a $1 million judgment in favor of the Securities and Exchange Commission. (D. Mem. 17; D. Reply Mem. 9.) Defendants claim that in light of these facts, which plaintiff himself alleges in the Complaint, plaintiff's general allegation of insolvency must be based wholly on Kodsi's prospective inability to satisfy the $13

8

milllion judgment plaintiff has not yet, and may never, obtain in the Illinois case, and that this debt is too speculative to constitute a "probable liability" under NYDCL § 271, which defines insolvency as "when the present fair value of [the debtor's] assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." (D. Mem. 18–19, D. Reply Mem. 9–10.) Whether the pending Illinois case is a "probable liability" is a question of law. But as defendant's marshaling of evidence as to Kodsi's solvency itself indicates, determination of insolvency under NYDCL § 271 is ultimately a question of fact. See In re Roblin Indus., Inc., 78 F.3d 30, 35 (2d Cir. 1996). The Court need not decide now whether the Illinois case is a probable liability, as plaintiff will later bear the burden of proof as to insolvency, and may adduce proof that is independent of the Illinois case, rendering this issue moot. For present purposes, plaintiff's allegation of insolvency in the Complaint, and defendants' failure to challenge these causes of action on any other basis, is sufficient to permit Claims Two and Four to survive a motion to dismiss, at least with regard to certain defendants.

IV. Statute of Limitations

Defendants argue in the alternative that, even if sufficiently pled, certain of plaintiff's claims are time-barred. As they correctly point out, under New York law, actions "based upon fraud" must be brought within six years of the fraud or conveyance, or within two years of discovery, whichever is longer. N.Y. C.P.L.R. §§ 203(g), 213(8).

As the present action was commenced on May 24, 2004, plaintiff may be time-barred from reaching those transfers falling outside of the preceding six-year period, i.e., those transfers prior to May 24, 1998. But if plaintiff is able to show that he first learned of the fraud after May

24, 2002, even claims dating back to the formation of the Trust in December 1997 would not be time-barred.

It may be difficult for plaintiff to prove that he would have been unable to discover alleged fraudulent transfers until May 24, 2002. The legal threshold for this issue is that which either was known to plaintiff, or that which could have been discovered "with reasonable diligence." N.Y. C.P.L.R. § 213(8). On April 24, 2002, plaintiff was present at the deposition in which he alleges Kodsi admits to having a fraudulent intent when making the transfers. (Kodsi Dep., Willens Decl. Ex. C, at 283.)[2] Thus, it seems unlikely that "with reasonable diligence" plaintiff would have been unable to discover the alleged fraud any later than that date. But this issue is not properly decided on a motion to dismiss. Defendants have conceded that at least one conveyance—the CSC Transfer—occurred in June 2000, well within the statute of limitations. Whether plaintiff should or should not have been able to discover before May 24, 2002 other transfers occurring between the December 1997 creation of the Trust and May 24, 1998— the earliest date ordinarily reached by the statute of limitations—is a fact question, the resolution of which must await discovery and further motion practice or trial. Plaintiff's claims thus survive at least to the CSC Transfer, and potentially to all transfers plaintiff is able to prove occurred either after May 24, 1998, or which he was unable to discover before May 24, 2002.

V. <u>Dismissal of Claims as Against Certain Parties</u>

It is a separate question as to against whom these claims can survive. While not challenging Claims Three (actual fraud) and Four (constructive fraud) as brought against Greco

---

[2] The April 24, 2002 transcript of the Continued Deposition of Alain Damian Kodsi includes a notice under "Appearances" that in addition to counsel, "also present" was plaintiff, Mr. Brian T. Sullivan.

in his capacity as trustee, defendants move to dismiss Claim One (actual fraud) and Claim Two (constructive fraud) as against Louis Greco in his individual capacity, arguing that "nearly all of the allegations against Mr. Greco are asserted on information and belief" (D. Mem. 9–10). Defendants also move to dismiss Claim Three (actual fraud) and Claim Four (constructive fraud) as against Georgette Kodsi and Rachel Foster, arguing that in addition to basing claims on no more than "information and belief," plaintiff has merely identified them as beneficiaries, a role that defendant argues is insufficient to state a claim against them. (D. Mem. 9, 20–21.)

As stated above, Claims One and Three of actual fraud, brought under NYDCL § 276, are subject to the heightened pleading requirements of Rule 9(b), and allegations must be plead with particularity as to each and every defendant. See, e.g., DiVittorio, 822 F.2d at 1247 (stating in the context of securities fraud claims that "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud"). More fundamentally, as to claims of both actual and constructive fraud, New York law permits *money damages* to be recovered only "against parties who participate in the fraudulent transfer *and* are either transferees of the assets or beneficiaries of the conveyance." RTC Mortgage Trust 1995-S/N1 v. Sopher, 171 F. Supp. 2d 192, 201–202 (S.D.N.Y. 2001) (emphasis added); see also Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158, 1172 (2d Cir. 1993) (applying New York rule of decision from FDIC v. Porco, 75 N.Y.2d 840, 841–42 (1990)). Even then, the liability of transferees is limited to a judgment in the amount of monies "wrongfully received," regardless of the total amount of the conveyance(s). Farm Stores v. School Feeding Corp., 477 N.Y.S.2d 374, 379 (N.Y. App. Div. 1984). Although Porco declines to extend liability to those who do not meet the second half of this test, *i.e.*,

11

nontransferees and nonbeneficiaries, but who do meet the first half, *i.e.*, participation in the fraudulent transfers, nothing in that case, or in the cases in this district and circuit applying the rule from Porco, suggests that those who meet the second half, *i.e.*, beneficiaries and transferees, may be liable without meeting the first half, *i.e.*, participation. While ordinarily it might be difficult for a transferee or beneficiary to be distinguished by definition from a participant in the transfer, the particular relationship of these defendants to the transferred assets creates just such a distinction: Greco is alleged to be a mediate transferee of the assets as a successor in interest to his predecessor trustees, and Georgette Kodsi and Foster are alleged to be beneficiaries of the conveyance as beneficiaries of the Trust to which assets were conveyed, but plaintiff has not alleged that these defendants themselves participated in the actual transfers.

Plaintiff's sole allegation against Georgette Kodsi and Foster is contained in ¶ 33 of the Complaint, and makes no reference to their participation in the transfers, stating merely that "[o]n information and belief, each of the Trust's beneficiaries have received or are entitled to receive the benefits of the assets fraudulently conveyed to the Trust." Although plaintiff asserts in his briefing that "it is fair to conclude" and "safe to assume" that Kodsi's wife and mother knew of various litigation pending against Kodsi at the time transfers were made (P. Mem. 14), even had these conclusory statements been included in the Complaint, they would have stopped short of alleging assistance in the transfers themselves, given that the assets were not in any way directly transferred into the hands of the Trust's beneficiaries, and do not speak at all to knowledge on the part of the beneficiaries of the exact alleged circumstances of the transfers and/or Alain Kodsi's finances at the time of the transfers.

Plaintiff's alternative contention that Georgette Kodsi and Foster must be made parties to this case under Fed. R. Civ. P. 19 because of their interest in the present assets of the Trust (P. Mem. 14) is without merit; the beneficiaries' interest is sufficiently protected by the present trustee, Greco, who has been named as a defendant in his representative capacity on Claims Three and Four, and, who is not alleged to have any interest which conflicts with those of the Trust's beneficiaries. Accordingly, defendants Georgette Kodsi and Rachel Foster are dismissed from the case, but plaintiff will be permitted leave, as requested (P. Mem. 24), to replead allegations which would be sufficient to raise Georgette Kodsi and Foster's liability as actual participants in the allegedly fraudulent transfers.

Nor has plaintiff alleged Greco's personal participation in the transfers. At most, he has alleged that Greco knew the transfers to be fraudulent, and has therefore "acquiesced in the Trust's fraudulent purpose and administered the Trust with that purpose in mind." (Compl. ¶ 31.) But this speaks not at all to his personal participation in the transfers, the last of which was completed in June 2000, nearly four years before Greco succeeded to the trusteeship on or about May 3, 2004. (Compl. ¶¶ 18, 26.) Plaintiff's assertions in his briefing that Greco did not take transfer of the assets in good faith because he was made aware of plaintiff's pending claims through an indemnity agreement he signed when he succeeded to the trusteeship (P. Mem. 13, citing to a "Receipt, Release, Indemnity and Refunding Agreement," Willens Decl. Ex. D, signed by Greco and which includes in paragraph 9(I) an obligation on the part of the Settlor to "take the steps necessary to be in compliance with any orders issued by the Illinois Court, Cook County, in connection with the pending lawsuit initiated by Brian Sullivan as they pertain to the Trust") is equally inapposite. This argument appears aimed at the limitation under NYDCL § 278 which

13

prevents suits against "a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser." But even if Greco did not take the Trust assets in good faith, this does not amount to alleging actual participation in the transfers, which is required before individual liability will be raised. Plaintiff will not be given leave to replead his allegations against Greco in his individual capacity since Greco is not alleged to have had personal involvement with the Trust prior to his appointment as trustee, several years after the period when the allegedly fraudulent transfers were made. Greco's status as trustee without more is insufficient to hold him personally liable for money damages for Kodsi's allegedly fraudulent transfers, and, like Georgette Kodsi and Foster, he is not a necessary party in his individual capacity for plaintiff to obtain the non-monetary relief sought. Accordingly, Claims One and Three, which are brought against Greco individually, should be dismissed as to him.

## CONCLUSION

For the reasons stated, the motion to dismiss is granted dismissing Claims One and Two as against defendant Louis Greco in his individual capacity, and Claims Three and Four as against defendants Georgette Kodsi and Rachel Foster, with leave for plaintiff to replead Claims Three and Four against Georgette Kodsi and Rachel Foster. As Claims One and Two would now be pressed only against defendant Kodsi, and he is named as a defendant on identical claims in Claims Three and Four, respectively, Claims One and Two are dismissed in their entirety as duplicative. The motion to dismiss is denied as to the other claims and defendants.

SO ORDERED.

Dated: New York, New York
       March 21, 2005

                                          /s/ Gerard E. Lynch
                                       _____
                                          GERARD E. LYNCH
                                          United States District Judge